429 So.2d 301 (1983)
Robert Brian WATERHOUSE, Appellant,
v.
STATE of Florida, Appellee.
No. 59765.
Supreme Court of Florida.
February 17, 1983.
Rehearing Denied April 27, 1983.
*302 Philip J. Padovano, Tallahassee, for appellant.
Jim Smith, Atty. Gen., and Peggy A. Quince, Asst. Atty. Gen., Tampa, for appellee.
PER CURIAM.
This case is an appeal from a judgment of conviction of murder in the first degree. The trial court sentenced appellant to death. We have jurisdiction. Art. V, § 3(b)(1), Fla. Const.
Appellant Robert Brian Waterhouse was tried before a jury and found guilty of the murder of Deborah Kammerer, which occurred in St. Petersburg on the night of January 2, 1980. A separate sentencing hearing was held, after which the jury recommended that appellant be sentenced to death. Appellant now challenges the legality of several items of evidence used against him and questions the propriety of the sentence of death on several grounds. We affirm the conviction and the sentence of death.
On the morning of January 3, 1980, the St. Petersburg police responded to the call of a citizen who had discovered the dead body of a woman lying face down in the mud flats at low tide on the shore of Tampa Bay. An examination of the body revealed *303 severe lacerations on the head and bruises around the throat. Examination of the body also revealed  and this fact is recited not for its sensationalism but because it became relevant in the course of the police investigation  that a blood-soaked tampon had been stuffed in the victim's mouth. The victim's wounds were such that they were probably made with a hard instrument such as a steel tire changing tool. Examination of the body also revealed lacerations of the rectum. The cause of death was determined to have been drowning, and there was evidence to indicate that the body had been dragged from a grassy area on the shore into the water at high tide. The body when discovered was completely unclothed. Several items of clothing were gathered from along the shore at the scene.
The body showed evidence of thirty lacerations and thirty-six bruises. Hemorrhaging indicated the victim was alive, and defense wounds indicated she was conscious, at the time these lacerations and bruises were inflicted. Acid phosphotase was found in the victim's rectum in sufficient amount to strongly indicate the presence of semen there. Also, the lacerations in this area indicated that the victim had been battered by the insertion of a large object. The medical examiner was also able to determine that at the time of the murder the victim was having her menstrual period.
After several days of investigation the police were unable to identify the victim, so they announced the situation to the public. They then received an anonymous telephone call simply informing them of appellant's automobile tag number and advising them to investigate it.
The police also learned the identity of the victim from two of her neighbors. These two acquaintances, Yohan Wenz and Carol Byers, testified at trial that they went to the ABC lounge with the victim on Wednesday night, January 2, 1980. They testified that they later left the lounge and that Ms. Kammerer remained there at that time. Kyoe Ginn, who was working there as a bartender that night, testified that the victim came into the bar with a man and a woman, that they later left, that Ms. Kammerer then began talking with appellant (who was known to the witness) and that at about 1:00 a.m. appellant and Kammerer left the bar together.
On the evening of January 7, 1980, police officers asked appellant to voluntarily go with them to police headquarters for an interview. At this time he said that he did not know any girl named Debbie and that he went to the ABC lounge on January 2 but did not leave with a woman. After this interview appellant was allowed to leave but his car was impounded for searching pursuant to warrant. The automobile was searched on January 8 and appellant was arrested on January 9.
Detectives Murry and Hitchcox arrested appellant. In the car on the way to the police station, after advising appellant of his rights, Hitchcox asked him, "We were right the other night, weren't we, when we talked to you about being involved in this case?" Appellant responded simply, "Might." Shown a picture of Deborah Kammerer, appellant this time admitted that he did in fact know her.
On the afternoon of January 9, the detectives again interviewed appellant. Detective Murry testified concerning this interview. She said that appellant became emotionally upset and said repeatedly that his life was over, that he was going to the electric chair. He said that he wanted to talk to his interviewers as people and not as police officers. He then said that he had some personal problems with alcohol, sex, and violence.
The two detectives interrogated appellant again on January 10. Again appellant said he wanted to talk to them as people rather than as police officers. Detective Murry testified that appellant again indicated that he experienced a problem involving sexual activity. He said that when he drinks a lot, it is like something snaps and he then finds himself doing things that he knows are terrible and bad, and that he cannot control his behavior on such occasions. Appellant also told the officers that when he wanted to engage in sexual activity with a woman *304 but learned that she was having her menstrual period, he would become frustrated and angry and that this is what had happened the previous Wednesday night. He also said that he had had a lot to drink on Wednesday night.
Inspection of the interior of appellant's car revealed the presence of visible blood stains, and a luminol test revealed that a large quantity of blood had been in the car but had been wiped up. Analysis of the blood in the car and comparison with known blood samples of appellant and the victim revealed that the blood in appellant's car could have come from the victim but was not appellant's blood.
A forensic blood analyst testified that it is possible through analysis of blood stains on certain surfaces to make estimates concerning the direction and velocity of motion of the blood making the stains. This witness concluded from her analysis that the blood in appellant's car was deposited in the course of a violent attack.
A forensic hair analyst testified that hairs found in appellant's car were consistent in their characteristics with known hair samples from the victim.
A forensic fiber analyst testified that fibers found in the debris adhering to the victim's coat were similar to fibers from the fabric of the seat cover in appellant's car. Also, fibers were found in the car that had the same characteristics as fibers from the victim's coat and pants.
Appellant was employed as a plaster and drywall worker. His foreman testified at trial that on the morning of January 3, appellant arrived at work asking for the day off. He appeared to have a hangover and said he was feeling rough. The witness said that at this time appellant had scratches on his face. The witness also said that appellant had told him that he liked anal intercourse and liked being with women who allowed themselves to be hit and slapped.
On this appeal, appellant contends (1) that the trial court erred in denying his motion to suppress the statements he made during his first interview, on January 7; (2) that the trial court erred in denying his motion to suppress the tangible evidence obtained from inside his car; (3) that the trial court erred in denying his motion to suppress the statements he made after his arrest, on January 9 and 10; (4) that the trial court erred in denying his motions to exclude evidence of collateral unlawful activity; (5) that the trial court erred in giving improper double consideration to a single aggravating factor in imposing the sentence of death; (6) that the trial court erred in considering the aggravating circumstance that the capital felony was committed in the course of a felony since the felony was an essential element of proof of felony murder; (7) that the trial court erred in finding the capital felony was especially heinous, atrocious, or cruel; and (8) that the trial court erred in finding that the murder was committed for the purpose of avoiding arrest. On several of the above points, appellant argues two or more grounds.
Prior to trial, appellant moved to suppress his statement of January 7. Appellant asserted that the initial stop of his car was an illegal arrest and that he was forced to accompany the officers to the police station. At the hearing on the motion, however, the state presented the testimony of officers who said that appellant was not arrested at this time and that he accompanied them voluntarily. Moreover, we conclude that when appellant was first stopped and was asked to go in for questioning, the investigators had reason to believe that appellant and his car had some connection with the murder. Therefore appellant's contention of error in admitting testimony of the January 7 statement is without merit.
Appellant argues that his car was seized without probable cause. After appellant's initial interview was concluded, he was allowed to leave the police station; he was not under arrest at that time. However, he was not allowed to take his car, which he had parked on the street across from the police station. Later that night, a *305 warrant for the search of the car was issued and the next day it was searched. Since appellant was not allowed to remove his car from where he had parked it, it is indisputable that the car was seized by the state without a warrant. It does not follow, however, that the subsequent search pursuant to a warrant was illegal. There was probable cause for the search, as is evidenced by the issuance of the warrant. There was also the exigent circumstance that the car was on the street and the appellant could have removed it and destroyed the evidence. Therefore, the seizure of appellant's car pending issuance of the warrant for its search was proper, based on probable cause and exigent circumstances. Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925).
Appellant contends that his statements of January 9 and 10 should have been suppressed because the police violated his right to remain silent by questioning him after he had demonstrated a desire to consult an attorney. In the pretrial proceedings on the motion there was testimony concerning the two interrogation sessions. On January 9 after making certain statements in the car on the way to the station appellant said, "I think I want to talk to an attorney before I say anything else." At this point the officers ceased questioning him. Then, when appellant was being processed into the jail on the charge of murder, Detective Murry asked appellant whether he would like her to come to his cell, talk to him, and answer any questions he might have. He seemed interested, so detectives Murray and Hitchcox went to talk to him at 2:00 a.m. At this point appellant became emotionally upset and made certain statements described previously. The conversation ended when appellant said, "I think I'd like to talk to my attorney. Would you all come back tomorrow?" Then on the following day there was further interrogation eliciting statements entered into evidence.
Appellant also argues that officers violated the fifth amendment by questioning him after he had invoked his right to consult an attorney. He cites Edwards v. Arizona, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981), which held that once an accused expresses a desire to deal with the authorities only through counsel, this desire must be scrupulously honored and the accused is not subject to further interrogation until counsel has been made available, unless the accused himself initiates further communication. Edwards does not apply here because appellant did not express a desire to deal with the police only through counsel. His statements that he thought he should talk to an attorney were at most equivocal requests to consult with counsel. The officers were not prohibited from initiating further communication for the purpose of clarifying appellant's request. Thompson v. Wainwright, 601 F.2d 768 (5th Cir.1979); Nash v. Estelle, 597 F.2d 513 (5th Cir.), cert. denied, 444 U.S. 981, 100 S.Ct. 485, 62 L.Ed.2d 409 (1979). Unlike in Edwards, appellant never explicitly stated that he did not want to talk to the police nor was he ever told that he was required to. Therefore the police did not act improperly in visiting appellant and questioning him further after his two equivocal statements expressing possible interest in seeing an attorney.
Appellant argues that the court erred in denying his motion to suppress the statements he made to detectives Murry and Hitchcox on the afternoon of January 10. That morning, appellant was taken to court for his first judicial appearance. At this time the public defender was appointed to represent appellant. Appellant argues that the officers should have notified his attorney before proceeding with the interview. There is no per se rule, however, requiring officers to notify the defendant's counsel before communicating with the accused and we decline to adopt such a rule now. The fact that an accused is represented by counsel does not preclude his waiver of the right to have counsel present when talking to law enforcement officers. Witt v. State, 342 So.2d 497 (Fla.), cert. denied, 434 U.S. 935, 98 S.Ct. 422, 54 L.Ed.2d 294 (1977). Here the appellant had invited the officers to return, was warned of his rights, *306 and knowingly waived his right to have counsel present.
Appellant also argues that his statements should have been suppressed on the ground that they were not made voluntarily but were the product of actual coercion. We find this argument to be completely without merit.
Appellant contends that the trial court should have prohibited any reference to some bags of marijuana that were found by the officers who searched and collected evidence from appellant's car. This testimony constituted evidence tending to show criminality separate from and unrelated to the crime charged in the indictment. The evidence was not relevant to any issue of material fact, and therefore should have been held inadmissible. See Williams v. State, 110 So.2d 654 (Fla.), cert. denied, 361 U.S. 847, 80 S.Ct. 102, 4 L.Ed.2d 86 (1959). The error, however, was harmless. The Williams rule is calculated to prevent the unfairness of convicting the accused on the basis of evidence showing him to have bad character or a propensity to commit crimes such as the one charged. "Evidence that the defendant has committed a similar crime, or one equally heinous, will frequently prompt a more ready belief by the jury that he might have committed the one with which he is charged, thereby predisposing the mind of the juror to believe the prisoner guilty." Nickels v. State, 90 Fla. 659, 685, 106 So. 479, 488 (1925). The admission of irrelevant evidence tending to show commission of a dissimilar or much less serious crime, on the other hand, may be harmless error. See Coppolino v. State, 223 So.2d 68 (Fla. 2d DCA), appeal dismissed, 234 So.2d 120 (Fla. 1969), cert. denied, 399 U.S. 927, 90 S.Ct. 2242, 26 L.Ed.2d 794 (1970). Appellant has failed to show how the testimony about the marijuana could have improperly prejudiced the jury against him. We therefore find the error to have been harmless. See State v. Wadsworth, 210 So.2d 4 (Fla. 1968).
Appellant also contends that the trial court erred in allowing the testimony of a cellmate who described an incident after appellant's arrest in which he either committed sexual battery upon another inmate or attempted to do so. Again appellant argues that the testimony was not relevant to any issue of material fact. We find, however, that the testimony was relevant because it included, and explained the context of, an incriminating admission made by appellant. The witness testified that he did not actually see what transpired between appellant and the other prisoner because the witness and the remaining prisoners were ordered from the room by appellant, who had armed himself with a sharpened spoon. However, the witness said he saw appellant a short time afterward and that appellant, who appeared angry and disheveled, said, "I wonder how he'd like a Coke bottle up his ass like I gave her." The relevance of this admission lies in its connection to the medical examiner's testimony that the victim's rectal lacerations were consistent with the insertion of an object such as a Coke bottle. The statement was therefore relevant and the testimony was admissible to provide the context in which the statement was made. The ruling was not error.
We come now to consideration of the sentencing proceeding and the sentence of death. As aggravating circumstances, the trial court found: (1) that appellant had previously been convicted of second-degree murder in the State of New York, a felony involving violence; (2) that at the time of the murder of Deborah Kammerer, appellant was on parole from the sentence imposed upon him for the New York murder (and was therefore under sentence of imprisonment); (3) that the murder of Deborah Kammerer was committed in the course of committing sexual battery; (4) that the murder of Deborah Kammerer was committed for the purpose of avoiding arrest by eliminating her as a witness to the crime of sexual battery; and (5) that the murder was especially heinous, atrocious, and cruel.
Appellant argues that the trial court gave improper double consideration to a single circumstance by reciting both that appellant had previously been convicted of *307 a violent felony and that he was on parole, citing Provence v. State, 337 So.2d 783 (Fla. 1976), cert. denied, 431 U.S. 969, 97 S.Ct. 2929, 53 L.Ed.2d 1065 (1977). The principle of Provence, however, is not applicable here. In Provence we reasoned that proof that a capital felony was committed during the course of a robbery necessarily was based on the same aspect of the crime that provided the basis for finding the motive of pecuniary gain. The same reasoning does not apply to the two aggravating circumstances in question here. The previous conviction and the parole status were two separate and distinct characteristics of the defendant, not based on the same evidence and the same essential facts. Therefore separate findings of the two factors were proper.
Appellant argues that it was improper for the court to find that the capital felony was committed in the course of the violent felony of sexual battery since the commission of the sexual battery was an essential element of proof of murder under the felony murder theory. This argument is without merit. White v. State, 403 So.2d 331, 335-36 (Fla. 1981).
Appellant argues that the trial court's finding that the crime was especially heinous, atrocious, or cruel was erroneous. The clearly established facts of the murder show that this contention is without merit. The victim suffered numerous bruises and lacerations inflicted with a hard, sharp weapon. There were defense wounds showing that she was alive and conscious when she was attacked. The victim was left in the water where she drowned. The capital felony was especially heinous, atrocious, or cruel. See State v. Dixon, 283 So.2d 1 (Fla. 1973), cert. denied, 416 U.S. 943, 94 S.Ct. 1950, 40 L.Ed.2d 295 (1974).
Appellant argues that there was insufficient proof that the murder was committed for the purpose of avoiding arrest. In support of this finding the state refers us to a statement appellant made to his interrogators when they asked him what he thought he should do about his "problem." He said, "You do what you have to do to protect Bobby Waterhouse. No one wants to go to jail." It is questionable whether this statement supports the inference drawn by the state. Appellant's statements also included suggestions that the murder was committed in a spur-of-the-moment rage. We need not decide, however, whether the lone statement is sufficient to prove a witness-elimination motive, since even without this aggravating circumstance there are numerous other aggravating circumstances to support the sentence, and no mitigating circumstances.
Appellant's contentions of error in the judgment are all without merit. The judgment is affirmed. We conclude that under the proven facts of the case, a sentence of death is appropriate. Therefore the sentence of death is also affirmed.
It is so ordered.
ALDERMAN, C.J., and ADKINS, BOYD, OVERTON and McDONALD, JJ., concur.