Robert B. WATERHOUSE, New York Parole Number AU60100, Florida State Prison Inmate Number 075376, Petitioner,

v.

Ramon J. RODRIGUEZ, Chairman of the New York State Board of Parole, Robert Abrams, The Attorney General of the State of New York, Louie L. Wainwright, Secretary of the Florida Department of Corrections, and R.L. Dugger, Superintendent of the Florida State Prison, Respondents.

No. CV 86 4262.

United States District Court, E.D. New York.

May 14, 1987.

submitted on or before June 1, 1987 for the month of May 1987.

Ira S. Sacks, James D. Herschlein, Kaye, Scholer, Fierman, Hays & Handler, New York City, for petitioner.

Demetri M. Jones, Asst. Dist. Atty., (Patrick Henry, Dist. Atty.), Suffolk County, Riverhead, N.Y., for respondents.

## MEMORANDUM AND ORDER

GLASSER, District Judge:

On March 13, 1967, during his trial for the murder of Ella Mae Carter on February 11, 1966, petitioner Robert Waterhouse withdrew his plea of not guilty and pleaded guilty to second degree murder in full satisfaction of the indictment. On April 28, 1967, the County Court of the State of New York for the County of Suffolk sentenced Waterhouse to imprisonment for twenty years to life. The court sentenced Waterhouse to the same sentence, nunc pro tunc, on October 29, 1969. This procedure permitted him to appeal from the judgment of conviction, which he did, unsuccessfully. *People v. Waterhouse*, 38 A.D.2d 1010, 331 N.Y.S.2d 372 (2d Dep't 1972) (mem.), *aff'd mem.*, 35 N.Y.2d 688, 319 N.E.2d 422, 361 N.Y.S.2d 160 (1974).

Waterhouse was paroled in 1975. Some years later, a Florida jury found him guilty of first degree murder in the January 2, 1980 death of Deborah Kammerer. The Supreme Court of Florida affirmed the judgment of conviction and the accompanying sentence of death. *Waterhouse v. State*, 429 So.2d 301 (Fla.), *cert. denied*, 464 U.S. 977, 104 S.Ct. 415, 78 L.Ed.2d 352 (1983).

Waterhouse is currently incarcerated in Florida and is pursuing a collateral attack on his conviction in that state. His petition for a writ of habeas corpus, 28 U.S.C. § 2254, in this court seeks vacatur of his New York conviction. Waterhouse is subject to future New York incarceration because the murder of which he was convicted in Florida would constitute a violation of parole. Moreover, the Florida sentencing court found five aggravating circumstances supporting imposition of the death penalty, two of which were "that [Waterhouse] had previously been convicted of second-degree murder in the State of New York, a felony involving violence" and "that at the time of the murder of Deborah Kammerer, [Waterhouse] was on parole from the sentence imposed upon him for the New York murder (and was therefore under sentence of imprisonment)." *Waterhouse v. State*, *supra*, 429 So.2d at 306.

Waterhouse advances three arguments in support of his petition. First, he contends that his New York conviction was obtained through the use of a coerced confession, in violation of the fifth and sixth amendments. Second, he maintains that his plea of guilty was not made voluntarily and with an understanding of the nature of the charge and the consequences of the plea, in violation of substantive and procedural due process. Third, he argues that he was denied his sixth amendment right to the effective assistance of counsel.

The State of New York responds that Waterhouse failed to exhaust his state remedies on the second and third claims. Because exhaustion is required by 28 U.S.C. § 2254(b) and (c), the State urges the dis-

missal of the entire petition or, in the alternative, Waterhouse's withdrawal of his unexhausted claims. *See, e.g., Holland v. Scully,* 797 F.2d 57, 64 (2d Cir.) (upon dismissal of petition for failure to exhaust some claims, petitioner has option of returning entire case to state courts or deleting unexhausted claims and bringing petition again in district court), *cert. denied,* — U.S. ——, 107 S.Ct. 237, 93 L.Ed.2d 162 (1986); *Petrucelli v. Coombe,* 735 F.2d 684, 687 (2d Cir.1984) (same). In addition, the State contests the merits of Waterhouse's three claims.

For the reasons that follow, the court concludes that Waterhouse has exhausted his state remedies on his third claim—that he was denied the effective assistance of counsel—and that the claim has merit. Accordingly, Waterhouse's petition for a writ of habeas corpus is granted conditionally.

## I. *Exhaustion*

This court recently observed:

It has long been settled "that a state prisoner must normally exhaust available state judicial remedies before a federal court will entertain his petition for habeas corpus." *Picard v. Connor,* 404 U.S. 270, 275 [92 S.Ct. 509, 512, 30 L.Ed.2d 438] (1971); *accord, e.g., Harris v. Scully,* 779 F.2d 875, 878 (2d Cir.1985).

*Gandia v. Hoke,* 648 F.Supp. 1425, 1427 (E.D.N.Y.1986), *aff'd mem.,* 819 F.2d 1129, (2d Cir.1987). Typically, unless it is crystal clear that a petitioner has exhausted his state remedies, the State of New York will claim that he has not. But our court of appeals has enunciated a generous standard on exhaustion:

In summary, the ways in which a state defendant may fairly present to the state courts the constitutional nature of his claim, even without citing chapter and verse of the Constitution, include (a) reliance on pertinent federal cases employing constitutional analysis, (b) reliance on state cases employing constitutional analysis in like fact situations, (c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, and (d) allegation of

a pattern of facts that is well within the mainstream of constitutional litigation.

*Daye v. Attorney General of the State of New York,* 696 F.2d 186, 194 (2d Cir.1982) (en banc), *cert. denied,* 464 U.S. 1048, 104 S.Ct. 723, 79 L.Ed.2d 184 (1984). The court finds that Waterhouse has satisfied the requirements of *Daye.*

Waterhouse's claim that he was denied the effective assistance of counsel has two branches. The second branch, which the court does not reach, is that Waterhouse was the victim of bad lawyering in a pretrial hearing and in his appeal to the New York Court of Appeals. The first branch, which the court finds exhausted and meritorious, is that Waterhouse's attorney was disbarred during the pretrial hearing.

The pretrial *"Huntley* hearing," *see People v. Huntley,* 15 N.Y.2d 72, 255 N.Y.S.2d 838, 204 N.E.2d 179 (1965), concerned Waterhouse's contention that his confession was coerced. Waterhouse was represented throughout the *Huntley* hearing by Edward LaFreniere, who was disbarred on the second day of the hearing. *See Suffolk County Bar Association v. LaFreniere,* 26 A.D.2d 946, 274 N.Y.S.2d 656 (2d Dep't 1966), *motion for leave to appeal dismissed,* 19 N.Y.2d 809, 226 N.E.2d 700, 279 N.Y.S.2d 967 (1967). On the same day, the hearing court concluded that Waterhouse "knowingly, intelligently and voluntarily waived his rights and the statement is admissible," Tr. 183.

At trial, which began more than three months later before a different judge, Waterhouse's new attorney, Harry R. Brown, repeatedly requested a new *Huntley* hearing. The main thrust of Brown's argument was that he should not be bound by the hearing court's determination, because LaFreniere failed to call a crucial witness. Brown stated: "I want to reopen this on the grounds that it's my opinion that this defendant's constitutional rights have been violated." Tr. 227. Although Brown did not raise the subject of LaFreniere's disbarment explicitly, he did raise a sixth amendment claim when he said that prior counsel failed to call a vital witness and

that this violated Waterhouse's constitutional rights.

What is more, when Waterhouse petitioned in April 1969 for a writ of error coram nobis, he raised the question of ineffective assistance of counsel by discussing the disbarment of LaFreniere and his failure to call important witnesses. The attack on LaFreniere's effectiveness continued in Waterhouse's briefs in the appellate division and the court of appeals. *See, e.g.,* Brief for Appellant at 11, *People v. Waterhouse,* 35 N.Y.2d 688, 319 N.E.2d 422, 361 N.Y.S.2d 160 (1974) ("[T]he threat of disbarment facing Mr. LaFreniere on the day of the Huntley hearing substantially affected that attorney's representation of the appellant.").

It is true that Waterhouse did not present his sixth amendment claim to the state courts with the same care and thoroughness that he demonstrated in this court. But he gave the state courts a fair chance to decide the sixth amendment claim, and that suffices to satisfy the exhaustion requirement. In light of this court's conclusion that Waterhouse did present his sixth amendment claim to the state trial and appellate courts, the court finds no merit in the State's contention that there was a procedural waiver within the meaning of *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). Because Waterhouse adequately presented his sixth amendment claim to the state courts, the court turns to the merits of the claim.

## II. *Sixth Amendment Claim*

■ Twenty years ago, the D.C. Circuit held that the sixth amendment, which guarantees criminal defendants the assistance of counsel, is violated when a defendant is represented by an individual who is not a member of the bar. Writing for the court, Judge Robinson stated:

> Failure to heed the constitutional admonition that the accused enjoy the right to assistance of counsel negates completely the court's jurisdiction to proceed. The proceeding is void, the occurrences therein are vitiated; transpirations otherwise legal go for naught.

*Harrison v. United States,* 387 F.2d 203, 212 (D.C.Cir.1967) (footnote omitted), *rev'd on other grounds,* 392 U.S. 219, 88 S.Ct. 2008, 20 L.Ed.2d 1047 (1968). In an opinion by Judge Friendly, the Second Circuit read *Harrison* as stating a per se rule and adopted that rule. *Solina v. United States,* 709 F.2d 160, 168 (2d Cir.1983). Solina had been represented at trial by a law school graduate who was never admitted to practice law. *Id.* at 162. The district court refused to set aside his conviction because it found the error harmless beyond a reasonable doubt. *Id.* at 165. Had the Second Circuit applied harmless error analysis, the district court's denial of a motion for a new trial would have been affirmed, because:

> There is simply nothing to suggest that a licensed lawyer for Solina could have arrived at a plea bargain, provided a single juror with a rational basis for having a reasonable doubt, induced the judge to impose a lesser sentence, or prevailed upon appeal, and everything to indicate that he could not.

*Id.*

But, in a characteristically thorough opinion, Judge Friendly concluded that a per se rule was necessary. The court noted that competence was not the sole issue, because Solina's representative was engaging in a crime when he practiced law without a license. "Such a person cannot be wholly free from fear of what might happen if a vigorous defense should lead the prosecutor or the trial judge to inquire into his background and discover his lack of credentials." *Id.* at 164.

Thus, "assistance of counsel" could mean no less than "representation by a licensed practitioner." *Id.* at 167. *Solina* cautioned that the per se rule would not apply when a defendant knew his representative was unlicensed (and thereby waived his sixth amendment right), *id.* at 167 n. 9, or where the representative belonged to the bar of another state but failed to obtain admission *pro hac vice;* where the representative merely failed to take the oath of admission or practiced before the formal admission ceremony; or where the attorney failed to pay the dues necessary to his

continuation at the bar, *id.* The per se rule does apply, however, "where, unbeknown to the defendant, his representative was not authorized to practice law in any state, and the lack of such authorization stemmed from failure to seek it or from its denial for a reason going to legal ability, such as failure to pass a bar examination, *or want of moral character."* *Id.* at 167 (emphasis added).

In LaFreniere's case, the appellate division found that he had on at least ten occasions accepted fees from clients and failed to make the necessary efforts thereafter. *Suffolk County Bar Association v. LaFreniere, supra,* 26 A.D.2d at 946–48, 274 N.Y.S.2d at 656–58. One of the charges sustained against him was that he had received money as escrowee on behalf of a client and failed to account for the missing balance. *Id.* at 947, 274 N.Y.S.2d at 657–58. Another was that he promised to pay a client's hospital bill out of funds he received in settlement of a personal injury action, but failed to pay the bill or remit any portion of the settlement to the client. *Id.* at 947–48, 274 N.Y.S.2d at 658. In short, the charges sustained against LaFreniere come within the ambit of *Solina's* "want of moral character." Indeed, Waterhouse's complaint regarding LaFreniere was that he failed to call available witnesses at the *Huntley* hearing, a charge very similar to those sustained by the appellate division.

Additionally, there can be no dispute that the *Huntley* hearing is a critical stage of the proceedings in state court. The sixth amendment right to counsel attaches as soon as judicial proceedings have been initiated against the defendant. *See Brewer v. Williams,* 430 U.S. 387, 398, 97 S.Ct. 1232, 1239, 51 L.Ed.2d 424 (1977); *accord Meadows v. Kuhlmann,* 644 F.Supp. 757, 761 (E.D.N.Y.1986), *aff'd,* 812 F.2d 72 (2d Cir.), *cert. denied,* —— U.S. ——, 107 S.Ct. 3188, 96 L.Ed.2d 676 (1987). In the present circumstances, there probably was no stage of the proceedings against Waterhouse more important than the *Huntley* hearing, because his confession was so crucial to the State's case against him.

It has been established that Waterhouse lacked counsel during a critical phase of the state court proceedings. The per se rule of *Solina* therefore seems to end the court's inquiry. There are, however, two arguments for declining to apply a per se rule in this case: (1) In *Solina,* the defendant's representative was never a member of the bar; here, by contrast, LaFreniere was a member of the bar until the final day of the suppression hearing; (2) Perhaps the per se rule of *Solina* should be re-examined in light of *Strickland v. Washington,* 466 U.S. 668, 692, 104 S.Ct. 2052, 2067, 80 L.Ed.2d 674 (1984), where the Court held that "any deficiencies in counsel's performance must be prejudicial to the defense in order to constitute ineffective assistance under the Constitution." This court holds that, under the present circumstances, *Solina* should not be distinguished or abandoned.

A divided panel of the Ninth Circuit declined to apply a per se rule in *United States v. Mouzin,* 785 F.2d 682 (9th Cir.), *cert. denied,* —— U.S. ——, 107 S.Ct. 574, 93 L.Ed.2d 577 (1986). *Mouzin* is similar to this case in that defense counsel was disbarred during the trial but did not cease his representation. *Id.* at 694. In his majority opinion, Judge Poole expressed concern that the district court was confronted with an unpleasant choice of continuing with the trial (which involved a second defendant) or stopping and "throwing the case into confusion and disarray." *Id.* The court held that "a defendant must ordinarily point to specific conduct which prejudiced him in order to raise the constitutional claim." *Id.* at 697. *Mouzin* distinguished *Solina* and the D.C. Circuit's decision in *Harrison* on the ground that there is a difference between representation by one never admitted to practice and one who is disbarred. *Id.* Applying a case-by-case, rather than per se, analysis, the court held that there had not been a denial of effective assistance of counsel. *Id.* at 698.

Judge Ferguson, in dissent, rejected the distinction between a never-admitted attorney and a disbarred one. He reasoned:

The discipline imposed against the attorney in this case was for failing to protect

his client's right to appeal, a classic example of refusing to represent a client's interests. Although [the attorney] proved that he was sufficiently competent to pass a bar exam, he was utterly incapable of representing his clients. Such proven inability as a lawyer is not required to reverse a conviction under the Majority's reasoning.

*Id.* at 702–03 n. 4 (Ferguson, J., dissenting). Judge Ferguson urged adherence to *Solina* and *Harrison* in the context of disbarment. "When attorney misconduct is so severe as to offend one's sense of justice or is so contrary to the notion of ethical behavior as to completely undermine the trust relationship, reversal of a conviction should be automatic." *Id.* at 703–04 (Ferguson, J., dissenting).

This court believes that Judge Ferguson's reading of *Solina* capture's the Second Circuit's meaning. *Solina* included "want of moral character," 709 F.2d at 167, as one basis for application of the per se rule. As discussed above, LaFreniere was found to lack moral character in several respects, all of which showed his unfitness to represent clients. If the per se rule applies to a defendant who receives competent representation from a never-admitted attorney, it should apply to a defendant who receives any kind of representation from a former attorney disbarred for want of moral character. Not only was LaFreniere adjudged unfit to be an attorney, but—like Solina's representative—he would have had some incentive to represent his client with less vigor than the sixth amendment requires. Solina's representative faced a risk, if unmasked, of being prosecuted for the unauthorized practice of law. *See id.* at 164 & n. 6. A similar concern—compounded by the trauma of his disbarment during the *Huntley* hearing—would lead LaFreniere to hold back.

Moreover, even if the *Mouzin* majority was correct, Waterhouse's case did not present the state court with the unpleasant dilemma faced by the district court in *Mouzin.* First, there was no co-defendant in Waterhouse's trial. Second, the state court would not have had to begin a two-month trial from scratch, *see Mouzin, supra,* 785 F.2d at 685, because Waterhouse sought no more than a new *Huntley* hearing before his trial commenced. The first *Huntley* hearing did not fill two days, and this court has no reason to believe that a second suppression hearing—even if Waterhouse received more vigorous representation—would have occupied a significantly longer period of time. Ultimately, however, these distinctions of *Mouzin* are unnecessary to the court's determination, because the court views *Mouzin* as inconsistent with *Solina,* and the latter states the law of this circuit.

The second potential reason to reject a per se rule is that *Solina* might be limited by *Strickland, supra.* The court concludes that it is not so limited and remains good law. Three months before the Supreme Court decided *Strickland,* the Second Circuit reaffirmed *Solina*'s per se rule in *United States v. Cancilla,* 725 F.2d 867 (2d Cir.1984), holding that the accused had been denied his sixth amendment rights when he was represented by an attorney who, unknown to the defendant, had engaged in criminal conduct similar to that charged in the indictment.

Indeed, *Strickland* itself held that "[a]ctual or constructive denial of the assistance of counsel altogether is legally presumed to result in prejudice." 466 U.S. at 692, 104 S.Ct. at 2067. That is precisely what occurred here, because LaFreniere was not an attorney during the second day of Waterhouse's *Huntley* hearing. The Court has reiterated that harmless error analysis does not apply when an accused is denied the right to counsel, because this deprivation renders his trial fundamentally unfair. *See Pope v. Illinois,* —— U.S. ——, ——, 107 S.Ct. 1918, 1922, 95 L.Ed.2d 439 (U.S.1987); *Rose v. Clark,* —— U.S. ——, 106 S.Ct. 3101, 3106, 92 L.Ed.2d 460 (1986); *cf. Walberg v. Israel,* 766 F.2d 1071, 1074 (7th Cir.) (Posner, J.) (harmless error analysis does not apply when defendant is deprived of right to modicum of adversary procedure), *cert. denied,* —— U.S. ——, 106 S.Ct. 546, 88 L.Ed.2d 475 (1985); *id.* at 1075 (per se rule of *Solina*

and *United States v. Hoffman*, 733 F.2d 596, 599–600 (9th Cir., 1984), remains valid in wake of *Strickland*).

In short, *Solina* is the law of this circuit and governs this case. Waterhouse's New York conviction cannot stand because he was deprived of his sixth amendment right to the effective assistance of counsel.

### III. *Conclusion*

A writ of habeas corpus, vacating Waterhouse's New York conviction, shall be issued unless the State retries him within sixty days of the date of this memorandum and order. In view of the court's resolution of Waterhouse's sixth amendment claim, it is unnecessary to reach his other two claims. Waterhouse's claim that his guilty plea was not a knowing and voluntary waiver of his rights becomes moot. His claim that his confession was coerced may be dealt with in a suppression hearing before his new trial. This time, Waterhouse will have an opportunity to seek suppression with the effective assistance of counsel.

SO ORDERED.