848 F.2d 375
 57 USLW 2011
 Robert B. WATERHOUSE, New York Parole Number AU60100,
Florida State Prison Inmate Number 075376,
Petitioner-Appellee,
v.
Ramon J. RODRIGUEZ, Chairman of the New York State Board of
Parole, Robert Abrams, The Attorney General of the State of
New York, Louie L. Wainwright, Secretary of the Florida
Department of Corrections, and R.L. Dugger, Superintendent
of the Florida State Prison, Respondents-Appellants.
 No. 210, Docket 87-2221.
 United States Court of Appeals,
Second Circuit.
 Argued Nov. 23, 1987.
Decided June 3, 1988.
 
 Demetri M. Jones, Asst. Dist. Atty. of Suffolk County, Riverhead, N.Y. (Patrick Henry, Dist. Atty. of Suffolk County, Riverhead, N.Y., of counsel), for respondents-appellants.
 James D. Herschlein, New York City (Ira S. Sacks, Kaye, Scholer, Fierman, Hays & Handler, New York City, of counsel), for petitioner-appellee.
 Before VAN GRAAFEILAND, WINTER and MAHONEY, Circuit Judges.
 WINTER, Circuit Judge:
 
 
 1
 In Solina v. United States, 709 F.2d 160 (2d Cir.1983), we held that a criminal defendant is denied his sixth amendment right to effective assistance of counsel when, unbeknownst to the defendant, he is represented by unlicensed counsel. This appeal raises the question whether Solina applies when a defendant's counsel is disbarred during a pretrial proceeding but withdraws after becoming aware of the disbarment.
 
 
 2
 Petitioner Robert B. Waterhouse is under a sentence of death in Florida for first-degree murder of Deborah Kammer in 1980. Waterhouse v. State, 429 So.2d 301 (Fla.), cert. denied, 464 U.S. 977, 104 S.Ct. 415, 78 L.Ed.2d 352 (1983). Two of the five aggravating factors that justified imposition of the death sentence concern a prior encounter Waterhouse had with the New York legal system. The first was Waterhouse's previous conviction in a New York court for second-degree murder, a crime of violence. The second was that Waterhouse was still on parole for the New York murder, and therefore under a sentence of imprisonment, when he murdered Deborah Kammer. He had been paroled in 1975. On December 19, 1986, Waterhouse filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. Sec. 2254 (1982) in the Eastern District seeking vacatur of the New York conviction as part of a collateral attack upon the Florida death sentence. His petition set out three claims. The first and second alleged that a confession used against him was coerced and that his guilty plea was involuntary. Judge Glasser granted the writ on Waterhouse's third claim, which asserted that the disbarment of Waterhouse's counsel during a pretrial suppression hearing resulted in the denial of Waterhouse's sixth amendment right to effective assistance of counsel under Solina. Waterhouse v. Rodriguez, 660 F.Supp. 319 (E.D.N.Y.1987).
 
 
 3
 On appeal, respondents argue that Waterhouse's failure to raise his sixth amendment claim either at trial or in his appeal to the Appellate Division precludes a finding that he has exhausted this claim in the state courts. In the alternative, they contend that, even if the claim is deemed exhausted, Solina does not apply in the circumstances of this case and that the petition should be dismissed on the merits. We hold that Waterhouse exhausted his sixth amendment claim but that Solina does not apply on the facts of this case. Accordingly, we reverse and remand.
 
 BACKGROUND
 
 4
 At about 8:15 p.m. on February 11, 1966, the nude body of Mrs. Ella Mae Carter, a 76-year old resident of Greenport, New York, was found lying across her bed. She had multiple injuries on her head and body and had been strangled. When Waterhouse arrived home sometime after 1:00 a.m. on February 12, he found a message that the police wanted to speak to him. Accompanied by a family friend, Kenneth Norwood, he voluntarily arrived at the Greenport police station at approximately 2:00 a.m. Sometime later, Norwood was told to leave. After questioning Waterhouse about Mrs. Carter's death for approximately one hour, the police became concerned about the number of people passing through the station who could look through a window into the room in which they were interrogating Waterhouse. They decided, therefore, to take him to the Seventh Squad detective office in Riverhead, a half hour ride from Greenport. The questioning continued during the ride, except for a fifteen minute period during which Waterhouse appeared to have fallen asleep.
 
 
 5
 Sometime after arriving in Riverhead, Waterhouse confessed to the killing. A confession was then typed out, which Waterhouse signed after initialing some corrections. The second paragraph of the confession stated "I have been advised that I do not have to give a statement, but I would like to cooperate and give this statement. I do not want a lawyer now but would like to have one when I go to court." Waterhouse signed the confession at approximately 6:00 a.m. on the morning of February 12, 1966. He was then arrested and charged with first-degree murder.
 
 
 6
 Waterhouse's first lawyer, Edward LaFreniere, obtained a pretrial "Huntley hearing," see People v. Huntley, 15 N.Y.2d 72, 255 N.Y.S.2d 838, 204 N.E.2d 179 (1965), before Judge McInerney of Suffolk County Court, to determine whether Waterhouse's confession had been coerced. At the hearing, four police officers testified for the state, while Waterhouse was the only witness called by the defense. During cross-examination of a police witness, LaFreniere referred to Norwood, who was in the courtroom, but did not call him as a witness. LaFreniere engaged in extensive cross-examination of the police witnesses, made numerous objections, took timely exceptions to adverse rulings, and brought out on direct examination of Waterhouse a version of events contradicting that offered by the prosecution.
 
 
 7
 According to the police, Waterhouse was informed of his right to counsel and his right to remain silent when he first arrived at the Greenport station and at several other times during his interrogation. The police denied making any threats or promises and stated that Waterhouse had told them he wanted to cooperate. They testified that Waterhouse repeatedly declined representation, declaring that he wanted a lawyer only when he went to court.
 
 
 8
 Waterhouse painted a different picture. He testified that he was intoxicated when he arrived at the police station. He claimed that the police had failed to advise him of his right to counsel and that he had repeatedly asked for, and was denied, an opportunity to call an attorney or family member. He denied he had fallen asleep during any portion of the trip to Riverhead. He claimed instead that he had merely closed his eyes for a while and that during this time he had heard the police planning to coerce a confession from him. He said he was physically threatened by the police and confessed only after having been forced to sit naked for two-and-one-half hours in a metal chair. He admitted signing the confession but did not recall initialing any corrections. Only after he had signed the confession was he allowed to dress and to make a phone call.
 
 
 9
 In rebuttal, police witnesses denied the pertinent portions of Waterhouse's testimony. They reiterated that they had several times advised him of his rights and had even offered to contact the public defender for him. They stated that there was no indication that Waterhouse was drunk but that he did appear to fall asleep about halfway to Riverhead. They conceded that he was told to remove his clothes so the officers might determine whether he had bruises in addition to observable facial scratches. After five minutes, he was allowed to dress.
 
 
 10
 After the Huntley hearing concluded on the morning of November 15, 1966, Judge McInerney found beyond a reasonable doubt that the facts were as the police had described and that the confession was admissible because "as a matter of law ... the defendant knowingly, intelligently and voluntarily waived his rights." Jury selection was scheduled to commence shortly thereafter. Instead, the court declared a mistrial when it learned that LaFreniere, who had been a member of the New York bar since 1934, had been disbarred for misappropriating client funds and for failing to represent clients after accepting fees. See Suffolk County Bar Ass'n v. La Freniere, 26 A.D.2d 946, 274 N.Y.S.2d 656 (2d Dep't 1966), appeal dismissed, 19 N.Y.2d 809, 279 N.Y.S.2d 967, 226 N.E.2d 700, motion denied, 19 N.Y.2d 920, 201 N.Y.S.2d 105, 227 N.E.2d 899 (1967). The order of disbarment became effective when entered on November 15, 1966, the second and final day of the Huntley hearing. LaFreniere withdrew as Waterhouse's counsel upon learning of his disbarment.
 
 
 11
 Harry R. Brown was thereafter appointed as counsel for Waterhouse. On March 6, 1967, jury selection began, this time before Judge Stark. Brown made several oral applications, including a motion for a new Huntley hearing. He claimed that he should not be bound by the actions of his client's previous attorney. Brown, who had read a transcript of the Huntley hearing, noted LaFreniere's failure to call witnesses other than Waterhouse and referred specifically to Norwood, who was again present in the courtroom. He also stated his belief that the challenge to Waterhouse's confession would have succeeded had other witnesses been called. Judge Stark was not persuaded but gave Brown permission to file a memorandum addressing his right to reopen the hearing.
 
 
 12
 On March 8, 1967, after jury selection had been completed, Brown renewed his motion for another Huntley hearing. Judge Stark denied the motion on the ground that Judge McInerney's ruling was binding. The case then went to trial, during which Waterhouse pled guilty on Brown's advice to a reduced charge of second-degree murder. On April 28, 1967, Waterhouse received an indeterminate sentence of twenty years to life.
 
 
 13
 On April 29, 1969, Waterhouse filed an application in Suffolk County Court for a writ of error coram nobis. He alleged that Brown had misled him as to his right to appeal and accordingly sought resentencing nunc pro tunc, so that he might perfect an appeal. His supporting affidavit recited the procedural history of his case, including LaFreniere's disbarment and Brown's attempt to obtain another Huntley hearing. The only error Waterhouse sought to correct through the writ, however, was Brown's failure to advise him of his right to appeal. The application was granted on September 3, 1969, thereby affording Waterhouse an opportunity to appeal.
 
 
 14
 Waterhouse thereupon appealed to the Appellate Division. The brief submitted by assigned counsel raised two points. The heading for "Point I" stated "Motion for new Huntley hearing should have been decided before trial commenced." The three-paragraph argument in support of this proposition was based entirely upon Section 813-h of the New York Criminal Procedure Law (repealed 1970, current version at N.Y.Crim.Pro.Law Sec. 710.40(3) (McKinney 1984)), which required pretrial suppression motions to be decided prior to trial. In the fourth and final paragraph of Point I, Waterhouse argued:
 
 
 15
 The entire concept behind the preliminary hearing process was breached when this crucial question [of whether there should be a new Huntley hearing] was left open by the trial judge. Certainly Mr. Brown should have been granted the right to a new hearing. The hearing conducted by Mr. LaFreniere was fine as far as it went, but many questions were unanswered that could have been supplied by a witness who was present in court. That witness was Kenneth Norwood. He could have testified as to the degree of the defendant's intoxication when he voluntarily appeared at the police station in Greenport. He might have been able to testify concerning the requests made by the defendant to make a telephone call or seek legal counsel. Mr. Brown wished to produce this witness who was then in the courtroom again.
 
 
 16
 In Point II, "Finding of voluntariness of statement and waiver of rights not supported by the record," Waterhouse argued that the warnings given to him were insufficient by the standards of Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and that his confession was involuntary.
 
 
 17
 The Appellate Division affirmed Waterhouse's conviction without opinion. People v. Waterhouse, 38 A.D.2d 1010, 331 N.Y.S.2d 372 (2d Dep't 1972). Acting pro se, Waterhouse then sought leave to appeal to the New York State Court of Appeals. In support of his motion, he contended that he had been given only a partial Huntley hearing because he was not afforded the opportunity to call witnesses who were present at the hearing. Waterhouse argued that the refusal to reopen the Huntley hearing so hampered Brown's representation that he was denied effective assistance of counsel and forced to accept a last-chance plea.
 
 
 18
 Waterhouse also sent a letter to Judge Marcus G. Christ of the Appellate Division. In this letter, he repeated his argument concerning the lack of opportunity to call witnesses upon his behalf. He also stated that he had urged his appellate counsel "repeatedly to raise this issue on appeal with no apparent success." Finally, he raised for the first time a claim that LaFreniere's (rather than Brown's) representation had been ineffective. He stated that "the total circumstances of the initial hearing and counsels [sic] disbarment, raised serious questions of said counsels [sic] competency and the affect upon appellant's right to a full plenary hearing." The state responded that the "alleged inadequacy of various attorneys assigned to him during the various proceedings" involved events that were not part of the record on appeal. Judge Christ granted leave to appeal to the Court of Appeals on May 22, 1972. Waterhouse was assigned new counsel for the appeal.
 
 
 19
 Waterhouse's brief in the Court of Appeals raised two new points, one of which, "Point III," is relevant to the present appeal. In that point, Waterhouse argued that "[w]here the physical condition of the defense attorney brings into question the fairness of the proceedings, a new evidentiary hearing is in order." Waterhouse asserted that the pressure of facing disbarment substantially affected LaFreniere's representation of Waterhouse at the Huntley hearing.
 
 
 20
 In response, the state argued that Waterhouse's failure to raise LaFreniere's impairment at trial or on appeal to the Appellate Division constituted a waiver. In the alternative, the state argued there was no evidence that LaFreniere was incapacitated. On October 7, 1974, the Court of Appeals affirmed, without opinion, the judgment of the Appellate Division. People v. Waterhouse, 35 N.Y.2d 688, 361 N.Y.S.2d 160, 319 N.E.2d 422 (1974).
 
 DISCUSSION
 1. The Rose v. Lundy Problem
 
 21
 Judge Glasser granted the writ on the grounds that Waterhouse had exhausted his sixth amendment claim in the state courts and that that claim was meritorious under our decision in Solina. He did not reach Waterhouse's other claims. He understandably perceived no need to reach the coerced-confession claim, conceded by respondents to have been exhausted, because Waterhouse would be entitled to a new Huntley hearing at his new trial. Judge Glasser also held that there was no need to reach the involuntary-plea issue in view of Waterhouse's entitlement to a new trial. Whether the involuntary-plea claim has been exhausted is a matter in dispute, however, and under Rose v. Lundy, 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982), the district court should not have reached the merits of any of Waterhouse's claims until it first determined that each of them had been exhausted. Indeed, as matters now stand on this appeal, there is a question as to whether we can address the merits of the granting of the writ in light of the status of the involuntary-plea claim.
 
 
 22
 We believe it clear that the involuntary-plea claim was never raised in the state courts. The only claim involving his guilty plea was Waterhouse's assertion that he had not been advised of his right to appeal (which he was then accorded). He never argued that his plea was involuntary. Because the claim was never raised, it cannot have been exhausted. Nevertheless, we believe that we should reach the merits of this appeal. Waterhouse offered in the district court to withdraw the involuntary-plea claim if the court found it not to have been exhausted so that his other claims could be heard. See id. at 520-21, 102 S.Ct. at 1204-05. If we were to reverse on Rose v. Lundy grounds and remand, the involuntary-plea claim will be dropped. The district court will then enter the identical judgment now before us, and an identical appeal will be taken. Nothing is to be gained by adopting this procedure.[1] We therefore address the merits.
 
 2. Exhaustion of the Sixth Amendment Claim
 
 23
 The exhaustion requirement is designed to assure that the petitioner has first given the state courts "a fair opportunity" to pass upon his claims. Daye v. Attorney General, 696 F.2d 186, 191 (2d Cir.1982) (in banc), cert. denied, 464 U.S. 1048, 104 S.Ct. 723, 79 L.Ed.2d 184 (1984) (citing Picard v. Connor, 404 U.S. 270, 275, 92 S.Ct. 509, 512, 30 L.Ed.2d 438 (1971); Wilwording v. Swenson, 404 U.S. 249, 92 S.Ct. 407, 30 L.Ed.2d 418 (1971) (per curiam)). In order to give the state courts such a "fair opportunity," the legal doctrines asserted in the state and federal courts must be "substantially the same." Id. at 192. The legal theory relied upon in the federal court need not, however, be identical to the legal theory presented to the state courts, provided that the essential factual allegations and the ultimate constitutional question raised in the federal petition were presented to the state courts. Id. at 192, n. 4.
 
 
 24
 In Daye, we summarized "the ways in which a state defendant may fairly present to the state courts the constitutional nature of his claim, even without citing chapter and verse of the Constitution," id. at 194, as including:
 
 
 25
 (a) reliance on pertinent federal cases employing constitutional analysis, (b) reliance on state cases employing constitutional analysis in like fact situations, (c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, and (d) allegation of a pattern of facts that is well within the mainstream of constitutional litigation.
 
 
 26
 Id.
 
 
 27
 Although we cannot agree with the district court that Waterhouse raised his ineffective assistance of counsel argument before the Appellate Division, we believe that issue was raised in the Court of Appeals. His argument in the Appellate Division was essentially a claim that a second Huntley hearing was necessary because of the requirements of New York procedural law. His subsequent letter to Judge Christ in support of his motion for leave to appeal claimed for the first time that he had received ineffective assistance from LaFreniere. After that motion was granted, his brief to the Court of Appeals noted that LaFreniere was disbarred as of the last day of the Huntley hearing and claimed that the prospect of disbarment "substantially affected" LaFreniere's representation. Although the claim may have been spare in detail, we believe that it sufficed "to call to mind a specific right protected by the Constitution" or amounted to an "allegation of a pattern of facts that is well within the mainstream of constitutional litigation." Id. The state's response to the motion for leave to appeal acknowledged that Waterhouse's papers complained of the "inadequacy" of his various counsel, and its brief in the Court of Appeals recognized the nature of his newly-raised claim by denying there was any evidence of LaFreniere's incapacitation at the Huntley hearing. Although Waterhouse now frames his claim as a per se violation of his sixth amendment right in light of Solina, we believe that his claim was raised in a sufficiently precise manner in the Court of Appeals to satisfy the requirements of Daye.
 
 
 28
 Even though Waterhouse has satisfied the "fair opportunity" standard of Daye so far as the New York Court of Appeals is concerned, his failure to raise it in the lower New York courts may nevertheless bar him from obtaining federal review of his claim. See Wainwright v. Sykes, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). According to Sykes, a procedural default in state court provides dispositive and independent state grounds for upholding the conviction, thereby rendering federal habeas review superfluous. Id. at 86-87, 97 S.Ct. at 2506-07.
 
 
 29
 We must thus address the question whether Waterhouse's failure to raise the sixth amendment claim earlier was a procedural default and was the basis for the Court of Appeals' affirmance of his conviction. In its brief to the Court of Appeals, the state argued that Waterhouse's "Point III" had not been previously raised and was therefore barred under New York law. The Court of Appeals affirmed without opinion. When the state has urged affirmance of a conviction on procedural grounds as well as on the merits and the state appellate court affirms without opinion, a federal court will generally infer that the state appellate court based its decision upon the petitioner's procedural default. See Rosenfeld v. Dunham, 820 F.2d 52, 54 (2d Cir.), cert. denied, --- U.S. ----, 108 S.Ct. 463, 98 L.Ed.2d 402 (1987); Martinez v. Harris, 675 F.2d 51, 54 (2d Cir.), cert. denied, 459 U.S. 849, 103 S.Ct. 392, 74 L.Ed.2d 521 (1982). In such circumstances, adequate and independent state grounds exist to bar federal habeas review. However, where a constitutional claim is clearly not subject to procedural forfeiture under state law, an inference that the state appellate court's silence indicates a decision resting on a procedural default rather than a negative view of the merits cannot be justified. Federal habeas review of the merits in such circumstances is not barred. Hawkins v. LeFevre, 758 F.2d 866, 874 (2d Cir.1985).
 
 
 30
 Under New York law, the Court of Appeals will entertain a claim of ineffective assistance of counsel despite the defendant's failure to raise that claim at trial or before the Appellate Division. See People v. Angelakos, 70 N.Y.2d 670, 673, 518 N.Y.S.2d 784, 786, 512 N.E.2d 305, 307 (1987); People v. Jones, 55 N.Y.2d 771, 773, 447 N.Y.S.2d 242, 243, 431 N.E.2d 967, 968 (1981). Given that rule,[2] we cannot infer that in silently affirming Waterhouse's conviction, the Court of Appeals' decision was based on a procedural default rather than on the merits. Accordingly, we hold that Waterhouse's ineffective assistance of counsel claim was exhausted and now turn to the merits.
 
 3. Waterhouse's Sixth Amendment Claim
 
 31
 In holding that Waterhouse was deprived of his sixth amendment right to effective assistance of counsel, the district court relied solely upon Solina v. United States, 709 F.2d 160 (2d Cir.1983). Solina had been represented at his trial for bank robbery by one Coleman, a law school graduate who had never been admitted to the practice of law in any state. Eleven years after his conviction, Solina learned of Coleman's unlicensed status. He then brought an action under 28 U.S.C. Sec. 2255 seeking vacatur of his conviction and a new trial. The district court agreed that Solina had been denied his sixth amendment right to effective assistance of counsel but denied the motion based upon its conclusion that the sixth amendment violation was harmless beyond a reasonable doubt. See id. at 161-62. We agreed with the district court's conclusion that, given the evidence against Solina, even a lawyer admitted in every state could not have gained an acquittal. Id. at 164.
 
 
 32
 Nevertheless, we refused to employ harmless-error analysis, but instead imposed a per se rule under which a violation of the sixth amendment will be found
 
 
 33
 where, unbeknown to the defendant, his representative was not authorized to practice law in any state, and the lack of such authorization stemmed from failure to seek it or from its denial for a reason going to legal ability, such as failure to pass a bar examination, or want of moral character.
 
 
 34
 Id. at 167 (citation omitted). In Solina we felt obliged to impose a per se rule because of Supreme Court precedent adopting the "somewhat surprising thesis" that there is a "jurisdictional defect" where a defendant is not represented by counsel at a criminal proceeding. Id. at 168-69 (citing Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938)). However, an alternative rationale for our decision was that persons who would knowingly commit the crime of unlicensed practice of law would inevitably suffer from serious constraints on their ability to provide effective representation to a criminal defendant. "Such a person cannot be wholly free from fear of what might happen if a vigorous defense should lead the prosecutor or the trial judge to inquire into his background and discover his lack of credentials." Id. at 164. We also noted that someone insensitive to the duty not to undertake representation in a criminal proceeding without a license is hardly likely to be more sensitive to his or her duty of undivided loyalty to the client. Id. at 164-65.
 
 
 35
 The alternative rationale of Solina was embraced in United States v. Cancilla, 725 F.2d 867 (2d Cir.1984), where a defendant was represented by licensed counsel who was himself guilty of the same criminal conduct for which the defendant was being tried. The rationale for applying the per se rule was that, as in Solina, a vigorous defense risked exposure of the defense counsel's participation in the crimes. Id. at 870. Nevertheless, we have adopted and applied the per se rule "without enthusiasm," however, see Solina, 709 F.2d at 169; Cancilla, 725 F.2d at 870, and we have never purported to expand applicability of the rule beyond the sort of egregious conduct present in Solina and Cancilla.
 
 
 36
 The district court concluded that LaFreniere's representation of Waterhouse at the Huntley hearing fell squarely within Solina on the ground that Waterhouse lacked licensed counsel because "LaFreniere was not an attorney" during the second day of the Huntley hearing. 660 F.Supp. at 324. The district court also noted that LaFreniere was disbarred for "want of moral character" within the meaning of that phrase in Solina. Id. Indeed, the district court considered the charges that led to LaFreniere's disbarment--that he accepted fees from clients but failed to make any efforts on their behalf and that he misappropriated client funds--"very similar" to Waterhouse's charge that LaFreniere failed to call available witnesses at the Huntley hearing. Id.
 
 
 37
 We disagree, however, with both the district court's interpretation of the record and its conclusion that the per se rule of Solina applies to this case. LaFreniere was a member of the bar when the Huntley hearing began. He ceased representation of Waterhouse immediately after learning of the disbarment. There was thus no conflict of interest, much less the sort of egregious conduct that the rule in Solina is designed to prevent. It is by no means clear that a state can sanction a lawyer for representing a client when a disbarment order has been entered that day but is as yet unknown to the lawyer. Such a rule would encounter a severe, if not insurmountable, constitutional objection and is unnecessary in light of the state's power to suspend attorneys pending final disposition of grievances against them. Unlike the phony attorney in Solina, or the attorney who himself was guilty of the same crimes for which his client was being tried in Cancilla, LaFreniere had no reason to fear that vigorous advocacy on behalf of his client would expose him to criminal liability or any other sanction. If anything, the charges pending against LaFreniere provided an incentive for the vigorous efforts he appears to have expended. Moreover, the charges underlying his disbarment were unrelated to his representation of Waterhouse, and we do not agree with the district court that these charges were "very similar" to his failure to call Norwood at the Huntley hearing. LaFreniere did call Waterhouse himself and otherwise participated vigorously in the hearing. Given Norwood's limited contact with pertinent events, the failure to call him is hardly the equivalent of the acceptance of legal fees with no subsequent representation. We therefore cannot accept the district court's conclusion that on the second day of the hearing, Waterhouse "lacked counsel" in any way implicating the concerns behind the per se rule of Solina.
 
 CONCLUSION
 
 38
 The order of the district court conditionally granting the writ on the grounds that Waterhouse's sixth amendment rights were violated is reversed. We remand to the district court for consideration of his coerced-confession claim, which can proceed after Waterhouse withdraws the involuntary-plea claim.
 
 
 
 [1]
 Our recent decision in Grady v. Lefevre, 846 F.2d 862, (2d Cir.1988), is thus distinguishable. In that case, the exhausted and unexhausted claims were "intertwined," id. at 865, and the state courts never had an "opportunity to consider all the circumstances and the cumulative effect of all the claims as a whole." Id
 
 
 [2]
 The decisions cited occurred well after Waterhouse's appeal. Nevertheless, they equate the right to effective assistance with the right to counsel. See Jones, 55 N.Y.2d at 773, 447 N.Y.S.2d at 243, 431 N.E.2d at 968 (citing People v. Baldi, 54 N.Y.2d 137, 444 N.Y.S.2d 893, 429 N.E.2d 400 (1981)). The right to counsel, of course, pre-exists Waterhouse's appeal