*1145 SILER, Circuit Judge.
Gwen Bergman has had a long and complicated history before this court and the District of Colorado. Upon remand after she successfully appealed her original conviction based on a plea agreement, the district court found her incompetent to stand trial. She then retained Howard O. Kieffer who had never been a licensed attorney. He represented Bergman when the court declared that she was competent and during her bench trial, after which she was convicted of solicitation to commit murder and criminal conspiracy, in violation of 18 U.S.C. §§ 1958(a) and (b) and 2. Before she was sentenced, the court discovered Kieffer’s fraud. It ultimately appointed new counsel and sentenced her to 108 months’ imprisonment. She appeals her conviction and sentence. Because Bergman was not represented by counsel when the court declared her competent, we REMAND for the district court to consider whether it can make a retrospective competency determination.
I. Background
In April 2004, Bergman pleaded guilty to a two-count information alleging the following: (1) a violation of the Travel Act, 18 U.S.C. § 1952(a)(1) and (3); and (2) criminal forfeiture pursuant to 18 U.S.C. §§ 982, 1956(c)(7), 1961(1), and 28 U.S.C. § 2461(c). United States v. Bergman, 191 Fed.Appx. 762, 763 (10th Cir.2006). The underlying allegations arose out of Bergman’s payment of $30,000 to an undercover law enforcement agent posing as a “hit man” to murder her ex-husband. Id. Despite early reservations, the district court accepted her plea and sentenced her to sixty months’ imprisonment and three years’ supervised release.
Bergman appealed her conviction and sentence, arguing that she had not admitted facts sufficient to establish a violation of 18 U.S.C. § 1952(a)(1) and (3). Three days before the scheduled oral argument before us on that appeal, the government admitted it erred and that her plea did not satisfy the elements of the violation. Id. We vacated her conviction and remanded to the district court. Id. at 763-64. On the same day we issued our mandate remanding the case, a grand jury indicted Bergman on new charges — use of interstate commerce facilities and mail in commission of a murder for hire, in violation of 18 U.S.C. § 1952(a) and (b) (Count 1); conspiracy to commit murder for hire, in violation of 18 U.S.C. § 1958(a) and (b) (Count 2); and criminal forfeiture, 18 U.S.C. § 982(a)(1) (Count 3). In October 2006, Bergman’s counsel, Assistant Federal Public Defender Edward Pluss, filed a motion to determine her competency to stand trial, despite her adamance that she was competent. He also moved for appointment of a Criminal Justice Act (“CJA”) attorney to represent her during the competency hearing. The court granted both motions and appointed CJA attorney Martha Eskesen to represent her as “special counsel” for the competency hearing.
At the competency hearing in February 2007, the court determined that Bergman was incompetent to stand trial and remanded her to the custody of the Attorney General to be hospitalized for treatment. Bergman then filed a pro se notice of appeal. While her appeal was pending, the government filed a motion to authorize involuntary administration of psychotropic medication. Before a hearing on that motion was held, Kieffer entered his appearance on Bergman’s behalf, and Pluss withdrew. Kieffer appeared telephonically at the hearing regarding forced medication. The court indicated it had received a re *1146 port from the Bureau of Prisons (“BOP”) opining that Bergman was competent to proceed, but suggested it did not have jurisdiction to continue due to Bergman’s pending appeal. Kieffer stated that the appeal was moot and that it would be voluntarily dismissed, given the BOP’s report. After a break, the government informed the court that it was ready to proceed with a competency hearing and requested that the court take judicial notice of the BOP’s report. Kieffer agreed with the government’s request for judicial notice. Based solely on that report, which is not in the Record, the court found Bergman competent to stand trial. The government then withdrew its motion for forced medication.
In December 2007, the government filed a superceding indictment, charging three counts based on the same facts, under 18 U.S.C. § § 981(a)(1)(C), 1958(a) and (b), 1956(c)(7), 1961(1), and 2, and 28 U.S.C. § 2461(c). After a bench trial in May 2008, during which Kieffer represented Bergman with E.J. Hurst, II, as co-counsel, she was convicted on Counts 1 and 2. In June 2008, after allegations against Kieffer began to surface, Hurst entered his appearance as counsel for Bergman. Finally, the court became aware of the fact that Kieffer was not a licensed attorney and that he was not authorized to practice before the court in July 2008.[1] The court stated that it was considering ordering a mistrial and vacating the verdict, and ordered the parties to comment on the issue. Hurst responded to this request, but never requested that the court grant a mistrial, and thereafter moved to withdraw as counsel. In September 2008, the court granted Hurst’s motion and reappointed Eskesen to represent Bergman.
Eskesen never filed a motion for new trial. However, she did file an amended motion seeking a sentencing hearing and requesting a correction of the record to reflect that an earlier motion to dismiss the forfeiture count was not filed pro se and should not have been stricken. The court granted that motion, scheduled a sentencing hearing, and reinstated the motion to dismiss the forfeiture count. It later dismissed the forfeiture account and accordingly amended the verdict. Bergman was sentenced in December 2008 to 108 months’ imprisonment for each count, to be served concurrently, and three years’ supervised release.
Bergman timely appeals her conviction and sentence, with the aid of counsel appointed under the CJA. She argues that her conviction should be overturned because she was denied her Sixth Amend *1147 ment right to counsel in determining her competency to stand trial and at trial, and that her sentence is unreasonable.
II. DISCUSSION
A. Sixth Amendment Right to Counsel
Bergman first argues that Kieffer’s representation of her at the October 2007 hearing, at which the district court determined she was competent to stand trial, violated her Sixth Amendment right to counsel.
“The Sixth Amendment entitles a defendant to the assistance of counsel at every critical stage of a criminal prosecution.” United States v. Collins, 430 F.3d 1260, 1264 (10th Cir.2005) (citing Kirby v. Illinois, 406 U.S. 682, 690, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972)). A critical stage is one that holds “significant consequences” for the defendant. Id. “[A] defendant is entitled to counsel at any proceeding where an attorney’s assistance may avoid the substantial prejudice that could otherwise result from the proceeding.” Id. A competency hearing is a critical stage at which a defendant is entitled to counsel. Id. Although it appears from the record that the October 2007 hearing was not a full competency hearing, the court declared Bergman competent at that hearing. Additionally, the government does not contend that this was not a “critical stage” in the proceedings, such that Bergman was not entitled to counsel. Accordingly, the October 2007 hearing was a “critical stage” at which Bergman’s right to counsel applied. Thus, we must determine whether Bergman’s Sixth Amendment rights were violated because she was represented by phoney counsel. Bergman argues that we should adopt a per se rule of ineffectiveness applicable where a defendant’s counsel has not been admitted to any bar; the government urges us to apply the standard for ineffective assistance of counsel established in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).
This is a case of first impression in our circuit. In United States v. Stevens, 978 F.2d 565 (10th Cir.1992), we rejected a per se ineffectiveness rule and applied the Strickland standard in a case where a criminal defendant was represented by an attorney whose bar membership was unknowingly revoked before his trial. Id. at 566-68. Relying on cases from our sister circuits, we concluded that “where ... a licensed attorney is disbarred without notice, the attorney’s representation is not per se ineffective.” Id. at 568 (citing United States v. Hoffman, 733 F.2d 596 (9th Cir.), cert. denied, 469 U.S. 1039, 105 S.Ct. 521, 83 L.Ed.2d 409 (1984); Waterhouse v. Rodriguez, 848 F.2d 375 (2d Cir.1988)). In doing so, we recognized that in Waterhouse, the Second Circuit distinguished its earlier case, Solina v. United States, 709 F.2d 160 (2d Cir.1983), “which established a per se ineffectiveness rule where the defective counsel had never been admitted to practice in any state.” Stevens, 978 F.2d at 567-68 (citing Waterhouse, 848 F.2d at 378).
Here, however, we are not simply faced with an attorney who had satisfied the substantive requirements and was later disbarred or whose admission to the bar was improper based on a technicality. Instead, we are faced with a situation where a criminal defendant was represented by a man claiming to have been successfully admitted to the bar, but who never attended law school or even graduated from college. The Second Circuit adopted a per se rule of ineffectiveness under similar facts in Solina, in which a convicted felon petitioned for habeas corpus, alleging that his Sixth Amendment right to counsel was violated because his attorney never passed a bar exam. 709 F.2d at 161. The court reasoned that “counsel,” as used by “Con *1148 gress in giving effect to the Sixth Amendment” meant, at the very least, “representation by a licensed practitioner.” Id. at 167. It explained that technical defects would not require the same per se rule. Id. (“We limit our decision in this case to situations where, unbeknown to the defendant, his representative was not authorized to practice law in any state, and the lack of such authorization stemmed from failure to seek it or from its denial for a reason going to legal ability, such as failure to pass a bar examination, or want of moral character.”). At least one other circuit has similarly adopted a per se ineffectiveness rule, applicable only where defendant’s attorney was never properly admitted to any bar. See, e.g., United States v. Mitchell, 216 F.3d 1126, 1132 (D.C.Cir.2000). Although other circuits have discussed Solina, they have not applied it, because the cases before them were factually distinguishable from Solina. See, e.g., United States v. Watson, 479 F.3d 607, 610 (8th Cir.2007) (explaining that Solina’s per se rule was narrow and not applicable to a case in which the attorney was a trained and qualified attorney, but with technical licensing problems); Familia-Consoro v. United States, 160 F.3d 761, 766 (1st Cir.1998) (citing Solina, but declining to apply its per se rule where a third party paid for defendant’s attorney); Sexton v. United States, 65 F.3d 169 (6th Cir.1995) (table) (declining to apply Solina where defendant had a trial team of six attorneys, and only one was not licensed); Bond v. United States, 1 F.3d 631, 637 (7th Cir.1993) (concluding that the facts before it did not reach the level of those in Solina).
We agree with the reasoning of the Second Circuit and adopt a narrow per se rule of ineffectiveness where a defendant is, unbeknownst to him, represented by someone who has not been admitted to any bar based on his “failure to ever meet the substantive requirements for the practice of law.” Id. at 167. Thus, Bergman was denied counsel at the October 2007 hearing, in violation of her Sixth Amendment right, regardless of her ability to prove prejudice.
Having concluded that her right to counsel was violated, we must determine the proper remedy. Although Bergman asks us to reverse her conviction, “[a] Sixth Amendment violation requires automatic reversal only when the constitutional violation pervades the entire criminal proceeding.” Collins, 430 F.3d at 1266. Deprivation of the right to counsel at a competency hearing affects the entire proceeding only if the defendant stands trial while incompetent. Id. at 1267. Thus, we must determine whether Bergman’s Sixth Amendment violation resulted in the district court erroneously concluding that she was competent to stand trial. Id.
Although generally disfavored, id. (citing Drope v. Missouri, 420 U.S. 162, 183, 95 S.Ct. 896, 43 L.Ed.2d 103 (1975)), retrospective competency hearings are not forbidden. To determine whether retrospective competency hearings are permissible, courts should consider the following factors:
(1) the passage of time, (2) the availability of contemporaneous medical evidence, including medical records and prior competency determinations, (3) any statements by the defendant in the trial record, and (4) the availability of individuals and trial witnesses, both experts and non-experts, who were in a position to interact with defendant before and during trial.
Id. (quoting McGregor v. Gibson, 248 F.3d 946, 962-63 (10th Cir.2001) (en banc)). In order to determine whether the Sixth Amendment violation here contaminated the remainder of Bergman’s criminal proceeding, we remand this case to the district court for an evidentiary hearing to determine whether it can make a retro *1149 speetive competency determination.[2] It should explore the factors listed above, and determine whether it is capable of determining whether Bergman was competent to stand trial in October 2007. If it is not able to make a retrospective competency determination, or if the court determines it can make a retrospective competency determination and it concludes that Bergman was incompetent, it must vacate the judgment, hold a hearing to determine Bergman’s current competency status — at which she must be represented by counsel — and proceed to trial when she is competent. On the other hand, if it concludes that Bergman was competent in October 2007, the court may still, in its discretion, vacate Bergman’s conviction and conduct a new trial.
Although Bergman alternatively argues she was denied effective assistance of counsel at trial, we decline to reach that claim. Generally, “[ineffective assistance of counsel claims should be brought in collateral proceedings, not on direct appeal.” United States v. Galloway, 56 F.3d 1239, 1240 (10th Cir.1995). As we explained in Beaulieu v. United States, 930 F.2d 805 (10th Cir.1991), overruled on other grounds by Galloway, 56 F.3d at 1241, ineffective assistance of counsel claims are more appropriate for collateral attack under 28 U.S.C. § 2255 than direct appeal, because the factual record for such claims is more developed when the district court conducts an evidentiary hearing on the issue. Beaulieu, 930 F.2d at 807; see also Galloway, 56 F.3d at 1240. Although we will, on rare occasion, consider such a claim on direct appeal, we do so only where no further development of the claim is needed prior to our review. Galloway, 56 F.3d at 1240. We will not remand a case for further development of the record during the direct appeal of a case. Id. at 1241; see also United States v. Mejia-Alarcon, 995 F.2d 982, 992 (10th Cir.1993) (“As a general matter, however, this Circuit does not stay proceedings on direct appeal to permit the district court time to make factual findings on ineffective assistance of counsel claims.... ”).
Further development of the record is required before we address Bergman’s in *1150 effective assistance of counsel claim. For example, additional information regarding the extent of Hurst’s representation of Bergman would assist us in determining whether to apply the ineffective assistance of counsel standard set forth in Strickland or the constructive denial of counsel standard in United States v. Cronic, 466 U.S. 648, 659, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984) (recognizing that a defendant may be denied counsel, despite actually having counsel, “if counsel entirely fails to subject the prosecution’s case to meaningful adversarial testing”). Although the Record demonstrates that Hurst only spoke four times during trial, we do not know the extent of his activities outside the courtroom. This additional evidentiary information would aid the court in determining which standard to apply and whether Bergman’s claim should prevail, and so we decline to address her claim for ineffective assistance of trial counsel. If the district court does not vacate her conviction on remand, she may pursue this claim through a collateral proceeding if she so chooses.
B. Sentencing
If the district court decides not to vacate Bergman’s conviction and conduct a new trial, we affirm her sentence of 108 months. We review sentencing challenges for reasonableness, which, in the sentencing context, is an abuse-of-diseretion standard. See Gall v. United States, 552 U.S. 38, 46, 128 S.Ct. 586, 169 L.Ed.2d 445 (2007) (“Our explanation of ‘reasonableness’ review ... made it pellucidly clear that the familiar abuse-of-diseretion standard of review now applies to appellate review of sentencing decisions.”); Rita v. United States, 551 U.S. 338, 351, 127 S.Ct. 2456, 168 L.Ed.2d 203 (2007) (“[Appellate ‘reasonableness’ review merely asks whether the trial court abused its discretion.”). We begin by noting that to the extent Bergman is attempting to seek appellate review of the district court’s denial of her request for a downward departure under Chapter Five of the Guidelines, we lack “jurisdiction ... to review a district court’s discretionary decision to deny a motion for downward departure on the ground that a defendant’s circumstances do not warrant the departure.” United States v. Sierra-Castillo, 405 F.3d 932, 936 (10th Cir.2005). “[We] may review a denial of a downward departure only if the denial is based on the sentencing court’s interpretation of the Guidelines as depriving it of the legal authority to grant the departure.” United States v. Fonseca, 473 F.3d 1109, 1112 (10th Cir.2007) (emphasis added). Bergman never argued that the district court concluded it did not have the authority to grant the departure, and our review of the record indicates that it acknowledged it did have such authority. Accordingly, we lack jurisdiction to review the district court’s denial of Bex-gman’s request for downward departure. Nonetheless, we may consider her departux-e arguments in considex-ing the overall reasonableness of her sentence. United States v. Chavez-Diaz, 444 F.3d 1223, 1228 (10th Cir.2006).
“Reasonableness review is a two-step process comprising a procedural and a substantive component.” United States v. Verdin-Garcia, 516 F.3d 884, 895 (10th Cir.2008) (citing Gall, 128 S.Ct. at 597). Procedural review requires us to consider whether the district court committed any “significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the [18 U.S.C.] § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence.” Gall, 128 S.Ct. at 597. Comparatively, substaixtive review “involves whether the length of the *1151 sentence is reasonable given all the circumstances of the case in light of the factors set forth in [ ]§ 3553(a).” United States v. Conlan, 500 F.3d 1167, 1169 (10th Cir.2007).
Because Bergman does not argue that the district court incorrectly calculated her Guidelines range of 121 to 151 months, we presume she is challenging the substantive reasonableness of the sentence, rather than its procedural reasonableness. Under the abuse-of-discretion standard, we “must now afford substantial deference to district courts.” United States v. Smart, 518 F.3d 800, 806 (10th Cir.2008). We may reverse Bergman’s sentence only if the district court’s sentencing decision was “arbitrary, capricious, whimsical, or manifestly unreasonable.” United States v. Munoz-Nava, 524 F.3d 1137, 1146 (10th Cir.2008) (quotation omitted). She argues that her sentence was unreasonable, given her mental condition, Kieffer’s fraudulent representation, and the fact that she may not have been competent to stand trial. She points to the fact that she was sentenced to only sixty months after her plea to the information, compared to 108 months under the superceding indictment, as evidence of the unreasonableness of her sentence.
Bergman’s 108-month sentence, which fell below the advisory Guidelines range, was reasonable. First, Bergman’s arguments regarding her competency to stand trial have already been addressed and were not relevant at sentencing. Second, the district court did consider Bergman’s mental health in formulating her sentence. Although the court denied her request for downward departure based on her mental status, it stated that “her mental-health condition is a consideration to be made in [its] ultimate decision under the sentencing factors.” In fact, the district court granted a downward variance from the Guidelines range of 121 to 151 months to a sentence of 108 months.
Finally, although Bergman was sentenced twice as long for her conviction under the superceding indictment than she was when she pled guilty under the information, her sentence was not unreasonable. She was convicted of the crimes charged under the superceding indictment, and the penalties for those crimes were more substantial than those charged under the information. Thus, it was not unreasonable to impose a greater sentence for her conviction under the superceding indictment. Overall, the sentencing transcript indicates that the district court carefully considered and applied the § 3553(a) factors. It balanced its concerns about the seriousness of the crime, the need for deterrence and public protection, and the defendant’s mental state in formulating its sentence. Its decision not to lower further Bergman’s sentence based on Kieffer’s representation does not render abuse of discretion. Bergman has not rebutted the presumption that her sentence of 108 months was reasonable.
III. CONCLUSION
We REMAND this case to the district court for further proceedings consistent with this opinion.

. Since Bergman's trial, Kieffer has been convicted for fraudulently gaining admission to the bar of the District of North Dakota by falsely claiming that he was a member of the bar of another federal court. See United Slates v. Kieffer, No. 08-cr-54, 2009 WL 1783553, at *2-3 (D.N.D. June 23, 2009) ("This was not a close case. The evidentiary basis was quite sufficient and the verdict was predictable.”). Not only was Kieffer never properly admitted to any bar, he also never took the bar exam, never graduated from law school, and never graduated from college. Id. at *3.
Kieffer’s fraud was quite extensive. In 1993, he was sentenced to five years' imprisonment and five years’ supervised release for filing false income tax returns. United States v. Kieffer, No. 08-cr-54, 2009 WL 973350, at *1 (D.N.D. Apr. 10, 2009). While in prison, he represented himself pro se in various habeas corpus petitions. See Kieffer v. United States, 995 F.2d 231 (9th Cir.1993) (table). After he was released, he began giving legal advice regarding federal sentences in the BOP and even spoke at conferences sponsored by the U.S. Administrative Office of the Courts and the National Association of Criminal Defense Lawyers. See, e.g., Felisa Cardona, U.S. Attorney to Probe "Attorney, ” The Denver Post, July 6, 2008, at B2. In all, he represented at least sixteen clients in ten federal courts across the country. Id.

. The dissent disagrees with our decision to remand to the district court for its consideration of whether a retrospective competency determination can be made, because "the government did not request that remedy and made no affirmative showing that a retrospective competency determination was warranted.” Although the government did not address the appropriate remedy in its brief— because it argued there was no underlying violation — it did address the issue at oral argument. When asked about the appropriate remedy, the government stated that it would be appropriate to remand for a retrospective competency determination, and that the district court could receive additional evidence, including the missing medical report, as well as hear testimony from the psychologists and/or psychiatrists that treated Bergman previously in determining whether Bergman was competent to stand trial. Thus, we are not choosing sua sponte to apply this remedy. In addition, the dissent concludes that "the government bears a heightened burden to demonstrate that a particular case falls within the 'limited circumstances’ under which a retrospective competency determination is warranted.” However, none of our prior cases considering whether a retrospective competency determination is appropriate have mentioned that the government bears such a heightened burden. See Collins, 430 F.3d at 1267 (noting that we have permitted retrospective competency determinations only in limited circumstances, but not mentioning any heightened burden); McGregor, 248 F.3d at 962-63 (same); Clayton v. Gibson, 199 F.3d 1162, 1169 (10th Cir.1999) (explaining that such competency hearings are disfavored, but "are permissible whenever a court can conduct a meaningful hearing to evaluate retrospectively the competency of the defendant” (internal quotation marks and citation omitted)). Accordingly, we see no reason to establish a heightened burden here.