FILED
United States Court of Appeals
Tenth Circuit

March 28, 2014

Elisabeth A. Shumaker
Clerk of Court

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

      Plaintiff-Appellant,

v.

GWEN BERGMAN,

      Defendant-Appellee.

No. 12-1373

---

**Appeal from the United States District Court
for the District of Colorado
(D.C. No. 1:04-CR-00180-WJM-1)**

---

Paul Farley, Assistant United States Attorney (John F. Walsh, United States Attorney, with him on the briefs), Denver, Colorado, for Plaintiff-Appellant.

Beth L. Krulewitch, Aspen, Colorado, for Defendant-Appellee.

---

Before **KELLY**, **TYMKOVICH**, and **GORSUCH**, Circuit Judges.

---

**GORSUCH**, Circuit Judge.

---

    Gwen Bergman thought she had hired a hit man to kill her ex-husband. She searched the Internet, found a name, negotiated a deal, even tapped her mother's retirement account to pay the man $30,000. But it turned out he was an undercover officer. Or at least that's the story the government presented and the

court credited at Ms. Bergman's trial. Yet as strange as all this may be, it's not the end of it. After trial it emerged that Ms. Bergman's lawyer was not a lawyer at all: he was a con man. And a pretty good one at that. For years he'd made a comfortable living duping clients and courts alike. *See United States v. Kieffer*, 681 F.3d 1143 (10th Cir. 2012); *United States v. Bergman*, 599 F.3d 1142 (10th Cir. 2010); *United States v. Bergman*, 191 F. App'x 762 (10th Cir. 2006).

It is this discovery that takes us to the current dispute. When Ms. Bergman (unsurprisingly) pursued a habeas motion under 28 U.S.C. § 2255 alleging a violation of her Sixth Amendment right to effective assistance of counsel at trial, the district court agreed, vacated her conviction, and discharged her from supervised release (she had already finished her prison term). Assuming the court's decision to vacate the conviction it won at Ms. Bergman's first trial was without prejudice to a new trial with a (real) defense lawyer, the government asked the court to set a date. But the district court refused, stating that its discharge order "implicitly" forbade any effort to secure a valid conviction at a second trial. It is this ruling the government now asks us to review and reverse.

Before getting to that business, though, we must attend to another. Do we have jurisdiction to hear this appeal? There's no question we may hear an appeal by the government from any "decision, judgment, or order of a district court dismissing an indictment." 18 U.S.C. § 3731; *see also United States v. Wilson*, 420 U.S. 332, 345 (1975); *Serfass v. United States*, 420 U.S. 377, 392-94 (1975).

But do we have that here?  The government filed a motion to set a new trial date in Ms. Bergman's criminal case.  The district court replied by treating that motion as a request to reopen Ms. Bergman's § 2255 proceeding, a proceeding the court had docketed separately as a civil case.  The district court then proceeded to deny the government's new trial request and enter an order saying so in *both* the civil habeas and the underlying criminal case.  And that poses us this question:  do the district court's actions denying a new trial date in the separate civil and criminal actions amount to an appealable "order . . . dismissing an indictment"?

No doubt this appeal's curious procedural posture owes at least something to § 2255's enigmatic character.  Some suggest that § 2255 proceedings should be understood as motions in the preexisting criminal prosecution.  Of course, § 2255 petitioners don't always enjoy the full panoply of rights the Constitution affords criminal defendants (like the right to be present or the right to be assisted by counsel).  Of course, § 2255 proceedings are often docketed as separate civil cases.  But on this account they remain part of the underlying criminal prosecution all the same.  *See, e.g.*, Rules Governing Section 2255 Proceedings for the United States District Courts, Rule 1 advisory committee note.  Others are less sure about this much, given that habeas petitions at common law were traditionally understood as collateral civil proceedings; given that § 2255 expressly aims to provide a remedy commensurate with the common law habeas writ; given that few of the rights defendants enjoy in criminal proceedings attach

in § 2255 proceedings; and given that the contrary understanding of § 2255 seems to be based in some significant measure on a single paragraph from the statute's 1948 legislative history. *See, e.g.*, 3 Charles Alan Wright & Sarah N. Welling, *Federal Practice and Procedure* § 622 (4th ed. 2011); *Wall v. Kholi*, 131 S. Ct. 1278, 1289 n.7 (2011) (noting "confusion"); *cf. Heflin v. United States*, 358 U.S. 415, 418 n.7 (1959) (suggesting § 2255 proceedings are collateral civil actions).

But whatever the confusion surrounding § 2255 in general or the procedural status of this case in particular, none of that can obscure the fact that the district court order before us qualifies as an "order . . . dismissing an indictment" for purposes of § 3731. To be sure, the order purports only to *deny* a trial date, not to *dismiss* the indictment. And, to be sure, one might worry that this leaves the indictment still alive, if perhaps lingering in a catatonic state never to be tested at trial but never to be formally dismissed either. Worries along these lines, however, seem to us to take too much account of form and too little account of substance. The district court has refused any trial on the indictment. Both the criminal and civil matters, it has declared, "shall remain closed." No new trial can be had, not now, not ever, so long as the district court's order remains in place. As a practical matter, that result is tantamount to a dismissal of the indictment even if it's not labeled that way. And it can't be the case that a district court may deny a party its statutory right to appeal by the simple expedient of refusing to enter an order explicitly labeled a "dismissal." *See*

- 4 -

*generally United States v. Scott*, 437 U.S. 82, 96 (1978) (a district court's characterization of its own action "cannot control" the question whether it amounts to an appealable order). Indeed, in many other arenas we grant appellate review if the proceedings in the district court appear firmly resolved, whether or not the district court has entered a document entitled "final judgment." *See, e.g., Yost v. Stout*, 607 F.3d 1239, 1243 (10th Cir. 2010). Seeing no reason to justify a different path here, we join those courts already holding that district court actions and orders bearing the practical effect of dismissing an indictment are subject to appeal under § 3731 even if they do not formally "dismiss" an indictment or happen to be labeled that way. *See United States v. Tranowksi*, 702 F.2d 668, 670 (7th Cir. 1983); *United States v. Cote*, 51 F.3d 178, 180-81 (9th Cir. 1995).

Ms. Bergman doesn't disagree with any of this but she does dispute our authority to hear this appeal all the same. After explaining that we may entertain appeals from orders dismissing indictments, § 3731 adds this qualification: "except that no appeal shall lie where the double jeopardy clause . . . prohibits further prosecution." So it is that our authority to entertain a governmental appeal hinges on a peek at the merits of any double jeopardy complaint the defendant may press. When we peek at the merits in her case, Ms. Bergman insists, we will find that the Double Jeopardy Clause does indeed foreclose any further prosecution against her — and, with that, the government's appeal.

With this we cannot agree. Of course, the Double Jeopardy Clause *sometimes* prohibits the government from proceeding further against a defendant — for example, after the defendant is acquitted or after the defendant's conviction is reversed for lack of sufficient evidence. *See Evans v. Michigan*, 133 S. Ct. 1069, 1074-75 (2013). But the Supreme Court has long held that the Double Jeopardy Clause does *not* prohibit the government from seeking a new trial when the defendant's conviction is reversed because of a trial error unrelated to the question of guilt or innocence. *See, e.g.*, *id.* at 1075; *Lockhart v. Nelson*, 488 U.S. 33, 38 (1988); *United States v. Wood*, 958 F.2d 963, 967 (10th Cir. 1992). And that description describes our case. Everyone before us acknowledges that Ms. Bergman received ineffective assistance of counsel at trial. But no one suggests the jury acquitted her or that the evidence presented against her was legally insufficient to support a finding of guilt. So it would seem pretty clear that Ms. Bergman isn't protected from further prosecution by the Double Jeopardy Clause and we may finally turn to consider the merits of the government's appeal.

But before we can do that, Ms. Bergman submits, we must consider one more wrinkle still. She says double jeopardy bars further prosecution not only when the defendant is acquitted or when the evidence against the defendant is insufficient to support a conviction but *also* when the defendant has fully served her sentence. For support, she cites a pair of out-of-circuit authorities, *United*

- 6 -

*States v. Smith*, 115 F.3d 241 (4th Cir. 1997), and *United States v. Silvers*, 90 F.3d 95 (4th Cir. 1996). But as it turns out these authorities do nothing to help her cause. At most they stand for the proposition that a defendant who has completed a sentence on a particular charge may not be resentenced later in a manner that imposes more punishment for the same charge. Even assuming without deciding this court would reach the same conclusion in an appropriate case, *cf. North Carolina v. Pearce*, 395 U.S. 711, 719-21 (1969), *overruled on other grounds by Alabama v. Smith*, 490 U.S. 794 (1989); *United States v. DiFrancesco*, 449 U.S. 117, 135-38 (1980), it is a conclusion without any application here. The question before us at the moment isn't whether Ms. Bergman may be exposed to a graver sentence after a new trial and conviction, it is whether she may be exposed to a new trial and a lawful conviction in the first place. Nothing in the cases Ms. Bergman cites purports to preclude that possibility. Neither, for that matter, does Ms. Bergman allege that she has fully discharged her sentence on any charge, so it's not clear the cases she cites would help her even at sentencing after a new trial and conviction.

With that, with any impediment to this appeal now finally cleared, we may at last approach the merits of the district court's order. A district court decision dismissing an indictment is generally reviewed for abuse of discretion. *See United States v. Fishman*, 645 F.3d 1175, 1185 (10th Cir. 2011). We think that's the right standard, too, when the district court's decision is tantamount to rather

than formally denominated a dismissal of the indictment. For its part, the government suggests the district court abused its discretion in this way. Absent "a double jeopardy bar," the government says, it possesses the absolute right, "at its option, to retry a defendant whose conviction has been reversed on direct appeal or vacated as a result of a collateral attack." And, as we've just seen, double jeopardy doesn't preclude a new trial here. So on the government's logic it possesses an unrestricted right to demand a new trial and the district court erred in holding otherwise.

Here it is the government that's mistaken. Of course and as we've seen, certain double jeopardy problems *can* prevent the government from retrying a successful § 2255 petitioner. But from this it doesn't follow that a district court granting relief under § 2255 may preclude a retrial *only* in the presence of a double jeopardy problem. To the contrary, § 2255 sets forth a variety of potential remedies and leaves it to the district court to choose the one that "may appear appropriate" in the case at hand. Nowhere does the statute single out double jeopardy violations for special treatment. Naturally, in habeas (as most elsewhere) remedies must be tailored to the wrongs they seek to redress. *See Lafler v. Cooper*, 132 S. Ct. 1376, 1388-89 (2012); *United States v. Morrison*, 449 U.S. 361, 365 (1981). But barring a new trial may be an appropriately tailored remedy not only when certain double jeopardy problems arise but also when (for example) any future prosecution would offend the defendant's

constitutional right to a speedy trial, proceed under an unconstitutional statute, or confront an insuperable jurisdictional problem. In each of these scenarios, a new trial would unavoidably violate the settled legal rights of the defendant and it is surely appropriate for a court in a § 2255 proceeding to acknowledge as much. *See Douglas v. Workman*, 560 F.3d 1156, 1176 (10th Cir. 2009) (denying retrial may be appropriate "when the error forming the basis for the relief cannot be corrected in further proceedings"); *see also* Brian R. Means, *Federal Habeas Manual* § 13:9 (2012) (collecting cases).

The government's first argument for reversal may bear its problems but the government's remaining argument bears closer scrutiny. Rather than contend categorically that *only* double jeopardy problems may preclude retrial, the government here suggests more modestly that the remedy the district court selected is too attenuated from the right it found violated. And here the government has a point. The district court found a violation of Ms. Bergman's Sixth Amendment right to effective assistance of counsel. It is beyond dispute that "Sixth Amendment deprivations are subject to the general rule" requiring habeas "remedies [to] be tailored to the injury suffered from the constitutional violation." *Morrison*, 449 U.S. at 364. To meet this standard, the Supreme Court has told us that a § 2255 remedy must address the Sixth Amendment violation but that it should also seek to avoid providing "a windfall to the defendant" and should seek to account for any "competing interests" present in the case at hand,

- 9 -

including "society's interest in the administration of criminal justice." *Lafler*, 132 S. Ct. at 1388-89; *Morrison*, 449 U.S. at 364. Bearing these considerations in mind, the presumptively appropriate remedy for a trial with an ineffective lawyer is a new trial with an effective one. Not absolution, not the liberty of avoiding a fair trial simply because at some point along the way the defendant happened to hire a bad lawyer (or someone posing as a lawyer). Instead, we generally seek to "neutralize the taint" of a Sixth Amendment ineffective assistance problem by "assur[ing] the defendant the effective assistance of counsel and a fair trial." *Morrison*, 449 U.S. at 365; *see also Pearce*, 395 U.S. at 721 n.18 ("It would be a high price indeed for society to pay were every accused granted immunity" from trial "because of any defect sufficient to constitute reversible error in [prior] proceedings.").

Of course, this doesn't mean that a district court may *never* refuse to permit a new trial after finding a Sixth Amendment effective assistance violation. Barring retrial may well be a reasonable remedy when, for example, it's clear even competent counsel could not "provide adequate representation" in a new proceeding. *Morrison*, 449 U.S. at 365-66. If so much time has passed and so many witnesses have died and so much evidence has been lost that not even Daniel Webster could provide constitutionally adequate representation, precluding a new trial could become an appropriate remedy for an effective assistance

violation much as it becomes an appropriate remedy when any future prosecution would confront a fatal and insurmountable speedy trial problem.

The difficulty is, there's no indication that this case poses a problem like that, no indication that the Sixth Amendment ineffective assistance problem the district court found present here can't be corrected by supplying Ms. Bergman with effective assistance in a future trial. Put simply, the presumptively appropriate remedy for an effective assistance violation is a new trial; the district court failed to identify any reason why that presumption is inapplicable here; and in these circumstances refusing a new trial amounts to an abuse of discretion. Indeed, this court's cases have long and consistently held as much and we see no way we might faithfully reach a different result now. *See, e.g.*, *Bromley v. Crisp*, 561 F.2d 1351, 1364 (10th Cir. 1977) (en banc) (reversing as abuse of discretion district court habeas order denying retrial in a case involving trial error); *Capps v. Sullivan*, 13 F.3d 350, 352-53 (10th Cir. 1993); *Burton v. Johnson*, 975 F.2d 690, 693 (10th Cir. 1992).

The district court's order denying a new trial takes pains to mention the fact that the court had already granted Ms. Bergman a *discharge* in response to her § 2255 motion. From this it appears the district court may have thought that a habeas *discharge* order necessarily and "implicitly" bars any future prosecution. But if that's the premise on which the district court proceeded, it is a faulty one. Section 2255 provides that a district court may "discharge the prisoner or

- 11 -

resentence him or grant a new trial or correct the sentence." Nothing in that language suggests that the granting of a discharge precludes a new trial (or vice versa). Our cases make the point plainly, explaining that a defendant can be granted a new trial with or without being discharged from custody and that she can be discharged from custody with or without prejudice to future efforts by the government to seek a new trial. *See, e.g.*, *Bowen v. Maynard*, 799 F.2d 593, 614 & n.12 (10th Cir. 1986) (discharge without prejudice); *Burton*, 975 F.2d at 693; 2 Randy Hertz & James S. Liebman, *Federal Habeas Corpus Practice and Procedure* § 33.2, at 1903-04 & nn.11 & 13 (6th ed. 2011) (collecting authorities). Indeed, this court has previously explained that "granting the writ" in any fashion "do[es] not generally bar retrial on the original charge," absent some express direction that so much is needed to remedy the violation found. *Bromley*, 561 F.2d at 1364.

In reaching a contrary understanding, the district court placed heavy emphasis on *Robinson v. United States*, 744 F. Supp. 2d 684, 697 (E.D. Mich. 2010). In that case, a Michigan district court granted the defendant an "unconditional" release after finding a Sixth Amendment violation and stressing that the defendant had completed most of his sentence. But the district court in *Robinson* never acknowledged or addressed the Supreme Court's instructions in cases like *Morrison* and *Pearce*; it issued its decision before and without the benefit of the Court's guidance in *Lafler*; and it did not address our precedents in

- 12 -

cases like *Capps* and *Bromley*.  Given its failure to confront any of the relevant authorities, *Robinson* does not begin to persuade us that barring a trial was an appropriate remedy in Ms. Bergman's case.  For that matter, it's not even clear whether the "unconditional" release in *Robinson* itself was with or without prejudice to future prosecution efforts under a new indictment.

After saying so much about Ms. Bergman's case, we pause to emphasize what we haven't said and don't mean to say.  We haven't suggested that a discharge with prejudice to any further prosecution is always an inappropriate habeas remedy, or even always an inappropriate remedy for the violation of a defendant's Sixth Amendment right to effective representation.  Neither have we attempted to catalog the reasons that might suffice to justify granting a discharge with prejudice.  To resolve this particular appeal, we need only observe that a discharge with prejudice to further prosecution efforts is a powerful remedy requiring powerful justification to qualify as tailored to the problem at hand — and in this case the district court failed to offer any reason suggesting so much might be called for here.  Perhaps such a reason lurks somewhere in the record, but it is not to be found in the order under review.

The district court's order is vacated and the case is remanded for further proceedings consistent with this opinion.