21CA1646 Peo v Griffin 12-12-2024

COLORADO COURT OF APPEALS

Court of Appeals No. 21CA1646
El Paso County District Court No. 08CR595
Honorable Deborah J. Grohs, Judge
Honorable Larry E. Schwartz, Judge
Honorable Jessica L. Curtis, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Theodore William Griffin III,

Defendant-Appellant.

JUDGMENT VACATED AND CASE
REMANDED WITH DIRECTIONS

Division VI
Opinion by JUDGE WELLING
Yun and Lum, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced December 12, 2024

Philip J. Weiser, Attorney General, Megan C. Rasband, Senior Assistant
Attorney General, Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, Sean James Lacefield, Deputy
State Public Defender, Denver, Colorado, for Defendant-Appellant

¶ 1     Defendant, Theodore William Griffin III, appeals his judgment of conviction for one count of sexual assault on a child-pattern of abuse and two counts of sexual assault on a child.  For reasons explained below, we vacate the judgment and remand this case to the trial court for it to redetermine issues regarding Griffin's competency at the time of trial applying the proper legal standard.

## I.     Background

¶ 2     Griffin began a sexual relationship with C.C.  At the time, Griffin was twenty-one years old, and C.C. was fourteen years old.  Griffin and C.C.'s relationship lasted between November 2007 and December 2007.  On December 31, 2007, C.C.'s parents found out about her relationship with Griffin and their relationship ended.  C.C.'s parents called the police, and on February 8, 2008, police arrested Griffin.  The District Attorney charged Griffin with one count of sexual assault on a child-pattern of abuse and two counts of sexual assault on a child.

### A.     Pretrial Competency Concerns

¶ 3     On March 3, 2008, Griffin's defense counsel filed a "Motion for Competency Evaluation."  In the motion, defense counsel stated that Griffin "has difficulty in his thought process, has been in a

succession of mental health programs and institutions and is presently in ongoing treatment." Defense counsel indicated his concern that Griffin's "disability affects his reasoning and ability to cooperate with counsel in his own defense." In response to this motion, the trial court ordered a competency evaluation on March 20, 2008.

¶ 4 John Crumlin, Ph.D., evaluated Griffin on April 16, 2008, and in a report dated May 6, 2008, opined that "Mr. Griffin, provided he remain sober and compliant with his medications, is currently competent to proceed to adjudication." (Emphasis omitted.)

### B. Competency Concerns During Trial

¶ 5 On January 4, 2010, the case proceeded to a two-day trial with the honorable Judge Grohs presiding over the trial. During the trial, Griffin engaged in odd behavior including crying during individual voir dire of jurors, either sucking his thumb or biting his nails, and appearing to fall asleep at the defense table. A potential juror who observed his behavior during voir dire responded to a question about bias by stating,

> bias has been created since I've sat in this
> room and watching the posture of the accused
> person, because he's very disrespectful in his

2

demeanor and the rest of us are here contributing our day completely awake and aware and willing to contribute to his innocence, and yet he's sitting there sleeping and sucking his thumb and not even sitting aware.

Three other potential jurors expressly agreed with this statement.

¶ 6    Following the juror's comment, the court spoke with Griffin outside the presence of the jury and explained to him that his actions were creating a bad impression and he needed to be "thinking about the fact that these people [would] be judging [him]." In response, Griffin stated that his "chest hurt[]" and he could "barely breathe" because he was stressed and hadn't slept in five days.  Griffin also stated that he hadn't consumed any drugs or alcohol.

¶ 7    On the second day of trial, Griffin refused to return to court to hear the jury's verdict.  Griffin's parents called his defense counsel to inform him that "[Griffin] was adamant about not leaving his house and was suicidal."

¶ 8    Defense counsel didn't raise competency concerns during the trial.  The jury convicted Griffin on all three charges.

## C.    Post-Trial Competency Concerns

¶ 9    During a sentencing hearing on April 7, 2010, Judge Grohs asked defense counsel whether he had "any concerns regarding [his] client's competency." When defense counsel pointed to his 2008 motion, the trial court stated that it had "concerns" about Griffin's competency during trial and that it was concerned that "[defense counsel] thought it had already been raised and that it was too late to raise it again." The trial court then told defense counsel that if he had "concerns regarding [his] client's competency, [he] need[ed] to raise it again."

¶ 10    On April 20, 2010, Griffin filed a motion for a new trial. The motion noted Griffin's odd behavior during trial and argued that it showed Griffin "could not assist counsel in his own defense." The motion also noted that Griffin suffered from bipolar disorder and that defense counsel "contacted Griffin's prior therapist . . . on a referral from [Griffin's] parents, and during the course of the conversation, was advised that [Griffin] had not been taking his medication."

¶ 11    On April 29, 2010, the trial court ordered a retrospective competency evaluation but denied the motion for a new trial. The

People suggested that Dr. Crumlin perform the retrospective evaluation because he already had Griffin's "background" and "history."

¶ 12    On May 28, 2010, Dr. Crumlin conducted a retrospective competency evaluation of Griffin and, in a report dated June 10, 2010, opined that, at the time of trial, Griffin "was suffering from a mental disease or defect that rendered him incapable of participating or assisting in his defense, and of cooperating with his defense counsel" and that he was "Incompetent to Proceed to adjudication." (Emphasis omitted.)  In forming his opinion, Dr. Crumlin relied on the definition of incompetent to proceed in force at the time of Griffin's arrest in February 2008.

¶ 13    On June 24, 2010, after Dr. Crumlin filed his report, the People filed a motion to recuse Judge Grohs.  That same day, the People filed a motion for a second opinion on Griffin's competency. In the motion, the People requested a second retrospective competency evaluation and a hearing on the issue of Griffin's competency.  In support of this request, the People stated only that they "believe[d] that Dr. Crumlin's conclusion [was] not supported by the evidence."

¶ 14    Judge Grohs recused herself and the honorable Judge Schwartz began presiding over Griffin's case. Judge Schwartz held a hearing on July 12, 2010, and addressed the People's motion for a second competency evaluation stating, "[the People] are *entitled* to a second opinion" before continuing the case for defense counsel to look at the motion. (Emphasis added.) On July 19, 2010, the court held another hearing on the second competency evaluation during which defense counsel confessed the People's motion for a second competency evaluation.

¶ 15    On August 9, 2010, the People requested that Jane Cleveland, Psy.D., perform the second competency evaluation. Defense counsel didn't object, and the trial court issued an order granting the motion for a second retrospective competency evaluation.

¶ 16    Dr. Cleveland evaluated Griffin on September 14, 2010, and issued a report on October 1, 2010, stating "[it] is . . . my opinion that Mr. Griffin is currently competent to proceed to adjudication." That same day, Dr. Cleveland submitted an addendum to her report at the request of the People stating, "[g]iven the inherent limitations of a retrospective analysis of competence, after reviewing the available evidence in this case it is my professional opinion that it

6

was more likely than not that Mr. Griffin was competent at the time of his trial in January of 2010." In forming her opinion, Dr. Cleveland relied on the 2010 version of the competency statute.

¶ 17    At a later competency hearing, Dr. Cleveland and Dr. Crumlin both testified consistent with their reports. The court made oral findings regarding Griffin's competency on July 5, 2011. In its findings, the court stated that it found both witnesses credible but that "Dr. Cleveland's conclusions were the most convincing." Following this ruling, the trial court let Griffin's conviction stand. Griffin appeals.[1]

## II.    Analysis

¶ 18    In this appeal, Griffin contends that the trial court made several errors during trial, specifically by (1) allowing the People to analogize the reasonable doubt standard; (2) excluding evidence under the rape shield statute and CRE 403; and (3) denying

---

[1] This 2010 conviction is before us on direct appeal because Griffin successfully pursued post-conviction relief based on his counsel's failure to perfect a direct appeal. *See People v. Griffin*, (Colo. App. No. 18CA229, May 13, 2021) (not published pursuant to C.A.R. 35(f)); *see also People v. Hill*, 296 P.3d 121, 125 (Colo. App. 2011) (the proper remedy for ineffective assistance of counsel based on a failure to perfect a direct appeal is reinstatement of the right to file a direct appeal).

7

Griffin's motion for a new trial because he was incompetent at the time of trial. As to the competency issue, Griffin asserts that the trial court erred by (1) granting the People's request for a second retrospective competency evaluation without a showing of good cause; (2) applying the incorrect competency standard when it found that Griffin was retrospectively competent; and (3) finding that Griffin was retrospectively competent.

¶ 19  We agree with Griffin that the trial court erred by granting a second retrospective competency evaluation without a showing of good cause and by applying the incorrect competency standard when it found that Griffin was retrospectively competent. Because we agree with these two contentions and because the issue of Griffin's retrospective competency needs to be resolved under the proper legal standard, we vacate his conviction and remand this case to the trial court for it to redetermine issues regarding Griffin's competency at the time of trial applying the proper legal standard.

### A. The Requirement of a Showing of Good Cause When Requesting a Second Competency Evaluation

¶ 20  Griffin contends that the trial court erred by granting the People's request for a second competency evaluation in the absence

8

of the People demonstrating good cause. In response, the People contend that Griffin waived this claim and, in any event, that the People demonstrated good cause for their request. We conclude that Griffin forfeited, but didn't waive, his claim and that because the People failed to demonstrate good cause as required by statute, the trial court erred by granting the People's motion without first making the requisite findings.

### 1. A Showing of Good Cause was Required

¶ 21    As an initial matter, we address whether the People were statutorily required to show good cause when requesting a second competency evaluation.

¶ 22    At the time of Griffin's offenses in 2007, the legislature hadn't adopted specific language addressing a second competency evaluation. Instead, section 16-8-106(1), C.R.S. 2007, governed requests for an additional competency evaluation. Specifically, section 16-8-106(1) stated, "[f]or *good cause shown,* upon motion of the prosecution or defendant, or upon the court's own motion, the court may order such further or other examination, including services of psychologists, as is advisable under the circumstances." (Emphasis added.)

9

¶ 23    In 2008, the legislature promulgated an act revising the competency statutory scheme. Ch. 389, sec. 1, 2008 Colo. Sess. Laws 1837. As part of this revision, the legislature added a new article devoted to the determination of a defendant's competency to proceed. Ch. 389, sec. 2, §§ 16-8.5-101 to -119, 2008 Colo. Sess. Laws 1838-50. In this new article, the legislature defined "second evaluation" and laid out parameters for requesting a second evaluation. § 16-8.5-101(14), C.R.S. 2008; § 16-8.5-103(3), C.R.S. 2008. Notably, in reference to a second evaluation, section 16-8.5-103(3), C.R.S. 2008, didn't require a showing of good cause, stating only that "[w]ithin ten days after receipt of the court-ordered report, either party may request a hearing or a second evaluation."

¶ 24    Regarding the changes to the statutory scheme, the legislature stated that "[t]his act shall take effect July 1, 2008, and *shall apply to offenses committed on or after said date*." Ch. 389, sec. 20, 2008 Colo. Sess. Laws 1860 (emphasis added). The 2008 changes to the guidelines for requesting a second competency evaluation remained in effect at the time of Griffin's trial in 2010. *See* § 16-8.5-103(3), C.R.S. 2010.

¶ 25　Because Griffin's sexual relationship with C.C. ended in December 2007, the 2008 version of section 16-8.5-103 didn't apply to Griffin's case.  Rather, the trial court was required to follow the earlier procedure established in section 16-8-106(1), C.R.S. 2007.  Accordingly, a showing of good cause was required before a second evaluation could be ordered.  *See* § 16-8-106(1), C.R.S. 2007.

### 2.　Waiver Versus Forfeiture

¶ 26　The People argue that Griffin waived any claim that the People failed to show good cause when they requested a second competency evaluation.  We disagree that this claim was waived.

¶ 27　"Waiver is 'the *intentional* relinquishment of a *known* right or privilege.'"  *Forgette v. People*, 2023 CO 4, ¶ 28 (quoting *People v. Rediger*, 2018 CO 32, ¶ 39).  In contrast, forfeiture occurs when a party fails "to make the timely assertion of a right."  *Rediger*, ¶ 40 (quoting *United States v. Olano*, 507 U.S. 725, 733).  Unlike waiver, "forfeiture generally occurs through *neglect.*"  *Forgette*, ¶ 29 (emphasis added).  "This distinction is important because a waiver extinguishes error, and therefore appellate review, but a forfeiture does not."  *Rediger*, ¶ 40.  Thus, forfeiture permits appellate review under the plain error standard.  *Id.*  A party can waive or forfeit

both their constitutional and statutory rights. *Richardson v. People*, 2020 CO 46, ¶ 24.

¶ 28 "Whether a claim is waived is a question of law we review de novo." *Id.* at ¶ 21.

¶ 29 When Griffin's counsel confessed the motion for a second competency examination, counsel stated,

> the DA wants . . . a reevaluation under the statute. And I think they're entitled to it, actually, so I'll confess the motion for another competency evaluation. And I have no objection to that as long as it centers on was he competent during the trial? Whether he's competent today or not doesn't mean anything. Competent during the trial is the issue.

Nothing in this statement or in the record evinces defense counsel's intent to relinquish the statutory requirement of a good cause showing. We therefore conclude that defense counsel's confession of the People's motion constituted forfeiture, not waiver.

¶ 30 The People contend that defense counsel's confession constituted waiver because defense counsel "affirmatively agreed" that the People were entitled to a second competency evaluation after having a week to consider the People's motion. While defense counsel had a week to consider the People's motion for a second

competency evaluation, there is no indication that defense counsel knew that section 16-8-106(1), C.R.S. 2007, applied and required a showing of good cause. Defense counsel's erroneous belief that the People were entitled to a second evaluation without showing good cause demonstrates that defense counsel *neglected* to read and apply the proper statute, not that he intended to relinquish the statutory requirement that the People demonstrate good cause.

¶ 31 Thus, Griffin forfeited rather than waived his claim regarding the People's failure to show good cause when they requested a second competency evaluation.

### 3. The Trial Court Plainly Erred

¶ 32 Griffin argues that the trial court erred by ordering a second competency evaluation without a showing of good cause. We agree.

¶ 33 We review constitutional and nonconstitutional errors "that were not preserved by objection for plain error." *Hagos v. People*, 2012 CO 63, ¶ 14. "Plain error is obvious and substantial" and we reverse "only if the error 'so undermined the fundamental fairness of the trial itself so as to cast serious doubt on the reliability of the judgment of conviction.'" *Id.* (quoting *People v. Miller*, 113 P.3d 743, 750 (Colo. 2005)). Generally, an error must "be so obvious that a

13

trial judge should be able to avoid it without the benefit of an objection." *Scott v. People*, 2017 CO 16, ¶ 16, *abrogated on other grounds by Whiteaker v. People*, 2024 CO 25. "For an error to be this obvious, the action challenged on appeal ordinarily 'must contravene (1) a clear statutory command; (2) a well-settled legal principle; or (3) Colorado case law.'" *Id.* (quoting *People v. Pollard*, 2013 COA 31M, ¶ 40).

¶ 34 The trial court plainly erred when ordering a second retrospective competency evaluation without a good cause showing from the People.

¶ 35 First, the error was obvious. Griffin's sexual relationship with C.C. lasted between November 2007 and December 2007. Because the legislature expressly stated that the 2008 amendment of section 16-8.5-103(3) applied only to offenses committed on or after July 1, 2008, it should have been clear to the trial court that section 16-8-106(1), C.R.S. 2007, governed the People's request for a second competency evaluation. *See Scott*, ¶ 16. It also should have been clear that the People didn't establish good cause in their motion for a second competency evaluation. In their motion, the People stated only that they "believe[d] that Dr. Crumlin's conclusion [was] not

supported by the evidence." This isn't enough to establish good cause. *See People v. Garcia*, 87 P.3d 159, 163 (Colo. App. 2003) (concluding that the trial court erred by ordering a second psychiatric evaluation to determine the defendant's sanity at the time of the offense because "[t]he court did not articulate reasons to support a showing of good cause" and "there must be some basis, other than counsel's opinion, for showing that the first examination was inadequate or unfair."), *aff'd in part and rev'd in part on other grounds*, 113 P.3d 775 (Colo. 2005).

¶ 36    Second, the error was substantial. If the People couldn't establish good cause for the second retrospective evaluation, then Dr. Crumlin's report opining that Griffin was retrospectively incompetent would have been the only opinion for the trial court to rely on. Because of this, the trial court likely would have found that Griffin was incompetent at the time of trial.

¶ 37    Because the trial court likely would have found Griffin retrospectively incompetent if the People couldn't establish good cause, the trial court's error so undermined the fundamental fairness of the trial itself that it casts serious doubt on the reliability of the judgment of conviction. *See Hagos*, ¶ 14.

15

¶ 38     We therefore conclude that the trial court plainly erred.

   B.     The Trial Court's Application of the 2010 Competency
              Standard Instead of the 2007 Standard

¶ 39     Griffin next contends that the trial court erred by applying the

2010 competency standard to retrospectively determine Griffin's

competency at the time of trial instead of the 2007 competency

standard.  We agree.

                    1.     Legal Principles

¶ 40     At the time of Griffin's offenses in late 2007 and at the time of

his arrest in February 2008, the definition of "[i]ncompetent to

proceed" was "the defendant is suffering from a mental disease or

defect which renders him incapable of understanding the nature

and course of the proceedings against him or of participating or

assisting in his defense or cooperating with his defense counsel."

§ 16-8-102(3), C.R.S. 2007.  The statute further defined "[m]ental

disease or defect" as

              only those severely abnormal mental
              conditions that grossly and demonstrably
              impair a person's perception or understanding
              of reality and that are not attributable to the
              voluntary ingestion of alcohol or any other
              psychoactive substance; except that it does not
              include an abnormality manifested only by

                              16

repeated criminal or otherwise antisocial
conduct.

§ 16-8-102(4.7), C.R.S. 2007.

¶ 41    With the addition of section 16-8.5-101 in 2008, the
legislature changed the definition of "[i]ncompetent to proceed."  Ch.
389, sec. 2, § 16-8.5-101(11), 2008 Colo. Sess. Laws 1839; § 16-
8.5-101(11), C.R.S. 2008.  The definition of incompetent to proceed
in section 16-8.5-101(11), C.R.S. 2008, read as follows:

> "Incompetent to proceed" means that, as a
> result of a mental disability or developmental
> disability, the defendant does not have
> sufficient present ability to consult with the
> defendant's lawyer with a reasonable degree of
> rational understanding in order to assist in the
> defense, or that, as a result of a mental
> disability or developmental disability, the
> defendant does not have a rational and factual
> understanding of the criminal proceedings.

Because the language in the new definition changed to "mental
disability or developmental disability," the previous definition of
"mental defect or disease" was no longer relevant.  As a result, the
legislature added a definition for "mental disability" and a definition
for "developmental disability."  The definition of "mental disability"
read as follows:

17

"Mental disability" means a substantial disorder of thought, mood, perception, or cognitive ability that results in marked functional disability, significantly interfering with adaptive behavior. "Mental disability" does not include acute intoxication from alcohol or other substances, or any condition manifested only by antisocial behavior, or any substance abuse impairment resulting from recent use or withdrawal. However, substance abuse that results in a long-term, substantial disorder of thought, mood, or cognitive ability may constitute a mental disability.

§ 16-8.5-101(12), C.R.S. 2008.

¶ 42    Again, the legislature provided that "[t]his act shall take effect July 1, 2008, and *shall apply to offenses committed on or after said date.*" Ch. 389, sec. 20, 2008 Colo. Sess. Laws 1860 (emphasis added). The 2008 changes to the definitions of "incompetent to proceed" and "mental disability" remained in effect at the time of Griffin's trial in 2010. *See* § 16-8.5-101(11), (12), C.R.S. 2010.

¶ 43    Because Griffin didn't object to the competency standard applied by the court at the time of trial, we review for plain error. *See Hagos*, ¶ 14.

## 2.    Analysis

¶ 44    Again, Griffin's sexual relationship with C.C. lasted between November 2007 and December 2007. Because section 16-8.5-101,

18

C.R.S. 2008, didn't apply to offenses committed before July 1, 2008, the definition of incompetent to proceed in section 16-8-102(3), C.R.S. 2007, rather than the new definition adopted in 2008, applied to Griffin's case. Despite this, both the trial court and Dr. Cleveland relied on the 2010 standard for incompetency rather than the 2007 standard for incompetency.

¶ 45     It became clear during the competency hearing that Dr. Cleveland applied the 2010 competency standard and Dr. Crumlin applied the 2007 standard. The following exchange indicates how the trial court planned to handle the discrepancy in the evaluator's application of standards:

> [The People]: Did Dr. Crumlin testify that he did not apply the current standard of competency in this case?
>
> T[he] C[ourt]: He's saying the standard he applied, as I understood him, was the one that he felt was in effect at the time that he did his original testing. I assume that's what you meant?
>
> [Dr. Crumlin]: Correct. The instructions I got from the Mental Health Institute were that the standard that applies is the standard that was in force at the time of the offense.
>
> [The People]: I'm gonna move to strike his entire opinion. A competency -- the court . . .

asked him to do a competency determination at the point of trial. If we're going back to the point of the time of the offense, he's already ruled that, at least in 2008, he was competent, so I'm not sure why going back and all of [a] sudden changing the opinion that back on the date of the offense it applies.

T[he] C[ourt]: I understand what you're getting at. I'm not going to strike his testimony. That's a function of legal argument amongst the lawyers and a decision I have to make. And *it goes to the weight*, not its admissibility.

(Emphasis added.)

¶ 46 When ruling on Griffin's retrospective competency, the trial court recognized that Dr. Cleveland and Dr. Crumlin applied two different competency standards and stated, "the difference is probably minimal at best. Nor is it particularly significant in my ultimate determination in this case." Ultimately, the court agreed with Dr. Cleveland's analysis stating,

> [s]o the question becomes whether retrospectively he was or was not competent at the time of trial. Based on the current standard. I conclude that . . . Dr. Cleveland's opinion is most satisfactory and most reliable in that determination. Concluding that her opinion is the most convincing, I conclude that [Griffin] was not suffering from a mental disability or developmental disability that resulted in [him] not having sufficient present ability at the time of trial to consult with his

> lawyer with a reasonable degree of rational
> understanding.  In order to assist in the
> defense.  Or that as a result of mental or
> developmental disability [Griffin] did not have
> [a] rational and factual understanding of the
> criminal proceedings.  Accordingly, I conclude
> that [Griffin] was competent during the course
> of trial.  Accordingly, the motion for [a] new
> trial must be denied.

¶ 47    We conclude that the trial court plainly erred when ruling on
Griffin's competency using the improper standard.

¶ 48    That the 2007 version of the statute applied to Griffin's
competency evaluation should have been obvious to the trial court
because the legislature expressly stated that the 2008 definition of
"incompetent to proceed" applied only to offenses committed on or
after July 1, 2008, so the new definition clearly didn't apply to
Griffin's case.  Ch. 389, sec. 20, 2008 Colo. Sess. Laws 1860; *see
Scott*, ¶ 16.

¶ 49    The trial court's error was also substantial.  Although the trial
court noted that, in its view, the differences between the 2007 and
2010 "incompetent to proceed" standards are "minimal," we can't
conclude based on our review of the record that the trial court's
finding that Griffin was retrospectively competent didn't stem from
the trial court's erroneous conclusion that Dr. Cleveland correctly

applied the 2010 standard, and that Dr. Crumlin incorrectly applied the 2007 standard. Indeed, the trial court indicated that the standard applied by each evaluator would go to the "weight" of the evidence. And the court's primary task in weighing the evidence was deciding the relative weight to accord Drs. Cleveland's and Crumlin's conflicting opinions. Because the trial court incorrectly believed that the 2010 standard applied, it's possible that the trial court was more persuaded by Dr. Cleveland's standard because she similarly applied the incorrect standard. By this logic, however, it's Dr. Crumlin's evaluation that should have been viewed more favorably because he properly applied the 2007 standard. Because the trial court's improper application of the 2010 standard may have influenced its conclusion that Dr. Cleveland's opinion of Griffin's competency was more persuasive, the trial court's error was substantial.

¶ 50    Because the trial court improperly weighed the evaluator's contrasting opinions, the trial court's error so undermined the fundamental fairness of the trial itself that it casts serious doubt on the reliability of the judgment of conviction. *See Hagos*, ¶ 14.

¶ 51   Thus, the trial court plainly erred in applying the incorrect competency standard.

### III.   Disposition and Instructions on Remand

¶ 52   Because we conclude that the trial court plainly erred by (1) failing to require a showing of good cause before ordering a second retrospective competency evaluation and (2) applying the wrong legal standard to its retrospective competency determination, we vacate the judgment and remand for further proceedings.  A remand is required because, based on the record before us, we can't say with confidence whether, if required to do so, the People could have established good cause for a second evaluation or whether, had the court applied the correct legal standard to its retrospective competency determination, it would or wouldn't have found Griffin competent at the time of his trial.  Instead, the trial court needs to make both of these determinations in the first instance.  And because the answers to both questions may be dispositive of this appeal, we opt to vacate the judgment and remand this case to the trial court to conduct further proceedings on the issue of retrospective competency, after which the trial court may reinstate

the judgment of conviction or order a new trial, depending on the outcome of the proceedings on remand.

¶ 53     Specifically, on remand, the trial court must (1) determine whether good cause exists to order a second competency evaluation; and (2) based on that determination, decide whether Griffin was retrospectively competent at the time of trial applying the proper legal standard.  Should the trial court answer the first question in the negative, then the trial court shall strike and disregard Dr. Cleveland's evaluation and make its retrospective competency determination based on Dr. Crumlin's evaluation (and the 2007 legal standard).  If, on the other hand, the trial court concludes that there was good cause for a second evaluation, the trial court shall make a retrospective competency determination considering both evaluations and applying the proper legal standard.  It is within the trial court's discretion to determine whether to take and consider additional evidence or permit further briefing or argument from the parties on remand.

¶ 54     If the court determines (1) it is not able to make a retrospective competency determination, or (2) it can make a retrospective competency determination and finds Griffin wasn't competent

24

during his 2010 trial, then the judgment shall remain vacated and a new trial will be required. *See People v. Lindsey*, 2018 COA 96M, ¶ 23 (first citing *United States v. Bergman*, 599 F.3d 1142, 1149 (10th Cir. 2010); then citing *State v. Bostwick*, 988 P.2d 765, 773 (Mont. 1999)), *rev'd and remanded on other grounds*, 2020 CO 21, ¶ 23. If a new trial is warranted because the court is unable to make a retrospective competency determination on remand, the court on its own or either counsel may question Griffin's competency at that new trial, thus triggering the statutory procedures for making such a determination. *Id.* If a new trial is warranted because the court finds that Griffin wasn't competent during his trial, the prosecution must prove that Griffin has been restored to competency before he can be retried. *Id.*

¶ 55 If the court concludes that a retrospective competency determination is feasible and further finds — applying the proper legal standard discussed above — that Griffin was competent during his 2010 trial, then the court shall reinstate the judgment of conviction, subject to Griffin's right to appeal that determination and raise any issues properly raised on direct appeal (including those issues advanced in his opening brief but not addressed in this

25

opinion). *Id.* at ¶ 24; *but cf. Bergman*, 599 F.3d at 1149 (even if the defendant was competent at the time of the original trial, "the court may still, in its discretion, vacate [the defendant's] conviction and conduct a new trial").

JUDGE YUN and JUDGE LUM concur.